## T. E. VAN DYKE v. E. J. VAN DYKE.

APPEAL BY LIBELLANT FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued April 10, 1890—Decided June 2, 1890.
[To be reported.]

1. Incompatibility of temper is not a cause for divorce in Pennsylvania, and will not justify an abandonment by the husband or by the wife of his or her marital obligations and duties.
2. The reasonable cause which will justify a desertion of a wife by her husband, or of a husband by his wife, must be such as would authorize a dissolution of the marriage bond by a divorce.

Statement of Facts.

3. A desertion, which is without consent and without sufficient legal cause, is presumed to be wilful and malicious; and, if persisted in for two years or more, it will entitle the injured party to a decree of divorce.

4. Where the husband was not derelict in his duty to support his wife and family, his refusal to pay his wife the price of his boarding, will not justify her in deserting and abandoning him.

5. A proceeding in the Court of Quarter Sessions, under the act of April 13, 1867, P. L. 78, resulting in an order for the payment by the husband of an allowance to his wife, will not bar a divorce, at his suit, on the ground of desertion.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 289 January Term 1890, Sup. Ct.; court below, No. 21 March Term 1889, C. P. No. 4.

On February 2, 1889, upon the libel of Thomas E. Van Dyke, charging his wife, Elnor J. Van Dyke, with wilful and malicious desertion of the libellant, and praying for a decree of divorce a vinculo matrimonii, the court awarded a subpœna which subsequently was served upon the respondent in person.

On April 6, 1889, the case was referred to *Mr. J. Henry Williams*, as master. On April 13th, the respondent filed an answer to the libel, denying the charge of wilful and malicious desertion, and, averring that the respondent had been compelled to leave the house of the libellant, because, by his failure and refusal to provide for her, and his constant and continued abuse and neglect and other indignities to her person, her condition had been rendered intolerable and her life burdensome, demanded a trial by jury. Afterwards the request for a jury trial was withdrawn, and the master appointed by the court proceeded to hear the case.

The testimony for the libellant, taken before the master, tended to prove that the libellant and respondent were married August 28, 1854; that they lived together as man and wife until 1881, when the respondent left the libellant, but after three months she returned, and they then lived together until October 6, 1884; that, on the date last named, the respondent again left her husband, without any notice to him of her intention so to do; that on the succeeding day she began a prosecution against him and had him arrested, and while he was in custody, before he succeeded in getting bail, she went

Master's Report.

to his house and removed therefrom all the furniture and carpets except those that were in his bedroom; that prior to her leaving she had refused to permit her husband to eat at the family table unless he would pay her regular boarding, and that she had declared to her son that she would leave if her husband did not pay his boarding.

The respondent admitted in her testimony that she had refused to give her husband anything to eat for ten months, stating however that she "had nothing to give him." She testified that her reason for leaving him was that he failed to support her and her family; that he gave her no means whatever, gave her no money towards providing for the table for eight or nine months before she left. The respondent also called several of her children who testified substantially to the same effect as to the cause of her leaving. One of them testified that the libellant had ordered the baker to stop serving bread at the house. Testimony for the libellant tended to rebut this statement, and to show that down until the departure of his wife the libellant paid the house rent, and the coal, light, bread and milk bills, while his wife paid the butcher's bills and other table expenses out of income received by her from keeping boarders.

There was testimony for the respondent tending to show that some months prior to the separation there had been quarrels between the parties, and the libellant had called his wife very harsh and even vile names; had pushed her and had thrown hammers at her; had threatened to lock her up and to give her nothing but bread and water, and that in January, 1884, he locked her out of his bedroom; it was shown, however, that there was no quarrel between them at the time of her departure. The libellant admitted upon cross-examination, that in the year 1889 the Court of Quarter Sessions of Philadelphia county made an order upon him requiring the payment of $2 a week to his wife for her support, and also $2 a week for his daughter Carrie. Portions of the testimony are quoted in the opinion of the Supreme Court, infra.

The master reported as to the facts and the law of the case as follows:

The master finds as facts that libellant and respondent are

### Master's Report.

and have been since 1854 citizens of Pennsylvania, and have resided therein for upwards of one year prior to the filing of the libel; that they were married August 28, 1854, and had ten children born to them, seven of whom are living; . . . . . that they lived together as man and wife until October 6, 1884; that Elnor J. Van Dyke, the respondent, did on the sixth day of October, 1884, leave the abode of the said libellant, without reasonable cause, and has ever since lived separate and apart from him, the said libellant.

One of the causes for which a divorce will be decreed under the laws of Pennsylvania is, wilful, malicious and continued desertion of either party from the habitation of the other without reasonable cause: Act of April 26, 1850, § 5, P. L. 591. And the reasonable cause which justifies a wife's desertion and abandonment of her husband must be such as would entitle her to a divorce: Detrick's App., 117 Pa. 452.

Counsel made no argument before the master, but presented a brief of authorities to show that where an order had been made by the Court of Quarter Sessions upon the husband for the support of his wife, he cannot obtain a divorce on the ground of desertion. No record of any such proceeding was, however, presented to the master, and it cannot, therefore, be considered as a fact in this cause. Besides which, the respondent admits that she left the libellant, but seeks to justify her act by alleging the failure of the husband to support her, and this she and all her witnesses give as the "reason and the only reason why she left." There is no law which says the failure of a husband to support his wife and family is ground for a divorce upon her application, and, even if there were, the master could not find from the evidence in this cause that the libellant had been derelict in his duty in that behalf: she had, therefore, no reasonable cause for deserting her husband.

The master is of the opinion and finds that Thomas E. Van Dyke, the libellant in this cause, was wilfully and maliciously deserted by his wife, the respondent, without a reasonable cause, and is, therefore, entitled to a decree in his favor and a divorce a vinculo matrimonii from the respondent, Elnor J. Van Dyke.

To the foregoing report, the respondent filed exceptions alleging that the master erred:

1. " Because the evidence shows that the libellant had refused the respondent admittance to his and her bedroom for some time before she left.

2. " Because the weight of the evidence shows that the respondent was compelled to leave the habitation of the libellant by reason of cruel and intolerable treatment and a refusal to provide food for the respondent and the family of respondent and libellant.

3. " Because the evidence showed that libellant admitted there had been an order made in the Court of Quarter Sessions against the libellant for the support of his wife and minor children."

Said exceptions having been argued, the court, ARNOLD, J., on December 14, 1889, filed the following opinion :

The parties to this suit were married in 1854. They are now about 54 years old. They have had ten children, of whom three are dead, and of those living, the eldest is 34 years old, and the youngest 15 years of age. Contentions between them culminated in a temporary separation in 1881, and a final separation in 1884, when the respondent moved away, taking most of the furniture with her, and set up housekeeping in another place. The libellant charges the respondent with wilful and malicious desertion, and the respondent alleges that the libellant compelled her to withdraw from his home and habitation.

The testimony of the witnesses, some of whom are the children of the parties, is quite voluminous. It forms a sad story of family jars by parties who seem to have neglected, if, indeed, they did not positively avoid, their duties and obligations. The testimony is a burden of small complaints unworthy of persons at their time of life. It indicates a disposition on both sides to breed and foster contention, rather than the affection and condescension which should exist between husband and wife. There is, however, neither wilful and malicious desertion without cause, nor a case of cruel and barbarous treatment proved. Neither is moral wrong nor personal violence shown. What is shown is incompatibility of temper, which is not recognized by our law as a cause for divorce.

If these parties had given some of the strength which was wasted in disagreement to an honest effort to agree and live

Arguments.

together, they would succeed beyond their most extravagant hopes. They must do this, for we see no reason to divorce them. What they want is not a divorce, but a reconciliation; not the decree of the court, but the ministration of the Church, to which we commend them. The report of the master in favor of a divorce is now set aside and decree of divorce refused.

—Thereupon, the libellant took this appeal specifying that the court erred:

1. In sustaining the exceptions to the master's report and refusing the decree of divorce prayed for.

*Mr. Louis Hutt* and *Mr. Thomas R. Elcock,* for the appellant:

1. The facts developed by the testimony show that the libellant supported his wife and family to the best of his ability. There is no evidence that he had any means which he concealed from them or refused to apply to their support. There is no satisfactory evidence of cruel treatment, nor does the wife rest upon the allegation of such treatment; she simply endeavors to justify her desertion upon the ground that her husband did not punctually pay his board to her, without any evidence of his ability in that respect or of his declining so to do. This was a wilful and malicious desertion, persisted in for a long period. She has never offered to return, but on the contrary, declines to do so absolutely.

2. The reasonable cause which justifies a wife's desertion and abandonment of her husband must be such as would entitle her to a divorce: Detrick's App., 117 Pa. 452. She could not be granted a divorce on this evidence, and, therefore, what she has shown is not a defence to the libel filed. It is difficult to see the reason for the conclusion of the court below, that when a woman leaves her husband with the determination not to return to him, carries away the furniture so as effectually to break up their home, and behaves in such a way as to render it impossible to live with her, her desertion is not malicious. As to the effect of the order of the Court of Quarter Sessions, see Bauder's App., 115 Pa. 480.

*Mr. John S. McKinlay* (with him *Mr. Fred. J. Shoyer*), for the appellee:

Opinion of the Court.

1. Although in Detrick's App., 117 Pa. 452, this court said that a mere failure to provide properly for the wife would not justify her in withdrawing from and deserting her husband, that case does not pretend to say that an absolute refusal to provide anything for the wife to live on, coupled with gross abuse and ill-treatment, is not sufficient reason for her withdrawing from her husband's house to preserve life ; in other words, the court did not mean to say that she must remain at her husband's house, though he starve her to death, unless she desire to be accused of wilful and malicious desertion.   Moreover, the libellant admitted that an order was made on him only a year ago for the payment of $2 per week for his wife's support, and he entered his bond to pay the same.

2. Such bond is an effectual bar to a divorce for desertion : Vanleer v. Vanleer, 13 Pa. 211 ; Schotte v. Schotte, 8 W. N. 236.   A divorce cannot be granted for desertion by the wife, when it appears that during the period of separation the husband has remitted an allowance to her : Ralston's App., 93 Pa. 133.   The only decision modifying the law, as to the effect of an order for support by the Court of Quarter Sessions, is Bauder's App., 115 Pa. 480, and in that case the husband had repeatedly requested his wife to return and offered to provide her with a proper home.   In the present case, the wife was forced to withdraw from her husband's house, and he has never requested her to return.

OPINION, MR. JUSTICE McCOLLUM :

We agree with the learned judge of the Common Pleas, that incompatibility of temper is not a cause for divorce in Pennsylvania, and we may add that it will not justify an abandonment by the husband or wife of his or her marital obligations and duties.   If there is anything settled in the law of divorce, it is that the reasonable cause which will justify a desertion must be such as will authorize a dissolution of the marriage bond.   Where a desertion is conceded or appears, and is without sufficient legal reasonable cause, it is presumed to be wilful and malicious, and, if persisted in for two years or more, will entitle the injured party to a divorce.   In this case there was a desertion by the wife deliberately planned, and continued for more than four years before the libel was filed.   Without notice to her husband,

Opinion of the Court.

she rented and moved into another house, and on the following day caused his arrest on the charge of desertion, and, while he was in the custody of the officer or in prison, removed all the furniture from his house, except that which pertained to his bedroom. Whether the arrest was a device to enable her to get possession of the furniture without opposition from him, or the charge of desertion was honestly made and prosecuted, we do not know, as the record of that proceeding is not before us. The learned master to whom the case was referred found that her desertion of her husband was wilful and malicious, and without reasonable cause. The learned judge, on exceptions filed to the master's report, concluded that "neither wilful and malicious desertion, without cause, nor a case of cruel and barbarous treatment," was proved; that "neither moral wrong nor personal violence" was shown; and that what did appear was "incompatibility of temper, which is not recognized by our law as a cause for divorce." But a desertion without consent or reasonable cause is presumed to be wilful and malicious, and incompatibility of temper is not a legal justification of it: Ingersoll v. Ingersoll, 49 Pa. 249; McClurg's App., 66 Pa. 366; Bealor v. Hahn, 117 Pa. 169; Detrick's App., 117 Pa. 452. As, in the present case, there was a deliberate, continued, and undisputed desertion by the wife of her husband, the material inquiry was whether she had reasonable cause for it; and, inasmuch as the master and court substantially agreed that she had not, we cannot see upon what ground the prayer of the libellant was refused.

We have examined and considered the evidence, and are convinced that the findings of the master are well sustained by it. The respondent alleged, as a justification of her abandonment of her marital duties, that her husband did not properly provide for his family. She testified in her own behalf, and called to the witness stand her sons John and George, and her daughter Mary, to corroborate her statement. She said: "I left my husband because he failed to support me and my family. I was compelled to leave him for that reason. He would not give me any means whatever. Of course, he paid the rent. He gave me no money towards providing the table for eight or nine months before I left." John said: "The only reason my mother left my father was because he did not pro-

vide any support for her, and she could not keep the house on the money she was getting from the boarders." George said: " The reason she left was because she did not get support; she did not, for about three or four months." And Mary said: " She left because he would not support the family, and we hadn't any peace." The libellant, in his own behalf, said: " I always paid the rent, coal, light, bread, and milk bills. I did not pay the butcher's bills. Towards the last my wife had an income of $22.50 a week from five boarders. I helped to clothe two of the youngest children, Carrie and Mary. I helped to clothe my wife up to January, 1884. . . . . She did not give me anything to eat. She took my knife and plate from me because I would not pay my board the same as boarders, although I was then making the payments I mentioned." His son Charles said: " My father paid the rent and coal; I can't say as to the rest. My mother said father did not pay his board; that he would get nothing to eat. She said that she could not put up with it any longer; that if he did not pay his board, she would leave." Lucas Glaesser testified that he furnished the bread for the family for three years, and up to the time the respondent left, and that the libellant paid him for it. The respondent further said: " For the period of ten months my husband did not eat at home; I refused to give him anything to eat for ten months; I had nothing to give him."

The foregoing extracts from the testimony clearly show that the cause of the desertion by the wife of her husband was his alleged inability or unwillingness to provide for his family as she thought he ought to, and that she excluded him from the table and denied him meals in his own house, when he declined to accept the position of a boarder therein. It is by no means certain that he refused to contribute to the support of his family according to his ability. The evidence on this point is conflicting, and the learned master reported that he could not find from it " that the libellant had been derelict in his duty in that behalf." There was some evidence of altercations between the parties, in which the husband used harsh and opprobrious language, but, as it distinctly appears from the testimony produced by the respondent that she left him because of his alleged failure to provide for his family or to pay his board in it,

we need not discuss matters which were incident to, or the outcome of, the principal grievance. It is sufficient to say of the whole evidence that it presents a case of wilful and malicious desertion without reasonable cause. The time has not come when the refusal of a husband to become a boarder in his own home will entitle his wife to a divorce, or justify her abandonment of him.

The proceeding in the Quarter Sessions is not a bar to this action: Bealor v. Hahn, 117 Pa. 169.

> The decree is reversed, at the cost of the appellee, and it is ordered that the record be remitted, with instructions to enter a decree for the libellant.

