## McCampbell, Appellant, v. McCampbell.

*Divorce—Desertion—Mother-in-law—Inadequate offer of home.*

Where a husband takes his wife and baby to live in his parents' home, and the wife while nursing the baby shares in the work of housekeeping, but being made unhappy by the unkind treatment of her mother-in-law tells her husband that she will either have to stay and suffer a nervous breakdown, or go to her own home, and the husband tells her to suit herself, and after she has returned to her own home, writes her a formal letter stating his willingness to provide her with a comfortable home, and she replies in an affectionate letter that she is willing to accept, but that the home must be separate from relations, and the husband does nothing further in the matter, he cannot thereafter maintain an action for divorce against his wife for desertion.

Argued May 2, 1916.  Appeal, No. 110, April T., 1916, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1915, No. 1034, dismissing libel for divorce in case of J. H. Reid McCampbell v. Mary E. McCampbell.  Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Libel for divorce.
The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing the libel.

*C. E. Theobald,* for appellant.—The mere existence of an unfriendly spirit between the mother-in-law and the wife as in this case cannot be called sufficient cruelty to justify the latter in deserting her husband: Dailey's App., 10 W. N. C. 420; Rodenbaugh v. Rodenbaugh, 17 Pa. C. C. R. 477; Detrick's App., 117 Pa. 452; VanDyke v. VanDyke, 135 Pa. 459; Howe v. Howe, 16 Pa. Superior Ct. 193; Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290; Roth v. Roth, 15 Pa. Superior Ct. 192; Whelan v. Whelan, 183 Pa. 293.

*Edward C. Chalfant,* with him *Arthur L. Over,* for appellee, cited: Kurniker v. Kurniker, 54 Pa. Superior Ct. 196; Benscoter v. Benscoter, 20 Dist. Rep. 349; Le Grand v. Le Grand, 24 Dist. Rep. 244.

OPINION BY HENDERSON, J., July 18, 1916:

To sustain an action of divorce for desertion it is necessary to prove that the separation was not only wilful and malicious on the part of the respondent but that it continued so to be and that it was without the consent or encouragement of the libellant. There must be an actual abandonment of matrimonial cohabitation with intent to desert and this must have been wilfully and maliciously persisted in without cause for two years. Separation is not necessarily desertion for it may occur without wilfulness or malice. The learned trial judge reached the conclusion from a consideration of the evidence that the appellant had failed to present a case of wilful and malicious desertion and with that conclusion we agree. Soon after the marriage of the parties the husband took his wife to his parents' home to live. Immediately afterward his mother left home for an extended visit and the respondent was put in charge of the house. The family consisted of the complainant's father and brother, the complainant, his wife and their baby which was born about that time. The young wife took care of her baby, managed the household and lived pleasantly until after the return of the complainant's mother when her condition commenced to be uncomfortable. Objection was made to having the baby brought down to the dinner table in the evening and the respondent therefore remained in her room with the child at that time. Criticism was made of the manner in which work was done on one occasion and an attitude exhibited by the mother-in-law which created a condition of nervousness and unrest in the respondent who was nursing her baby and engaged in the work of the house. The following quo-

tation from the evidence of the complainant's mother throws light on the situation: "Q.—There was no affection lost between you was there? A.—I don't think I ought to answer that. I don't think any mother would have much affection for a girl forced upon her. Do you?" As does also this: "Q.—Didn't you have a little difficulty with her? A.—Once I did; I told her something—I don't remember what it was; once only—it didn't last two minutes. Q.—Do you remember of stamping your foot at her? A.—Yes, I frequently stamped my foot at her. When I wanted anything done, I stamped my foot and said 'Go and do it quick.'" It is not surprising that where the feeling of the complainant's mother was not of a cordial and affectionate character the respondent would experience discomfort and unrest. In such a state of mind and soon after the criticism of her conduct by the mother-in-law the respondent told her husband that she could not stand the treatment any longer and said to him: "I will either have to stay here and go down with a nervous breakdown or will have to go home." To which he replied as testified to by the respondent: "Just suit yourself about it." Thereupon on the 3d of December of the year in which they were married she went to her parents' home with the baby. Two days afterward the complainant wrote to her this letter:

"12/5/12.

"Mrs. Effie McCampbell,
    "731 Florence Ave.,
        "Avalon, Pa.
"MY DEAR MRS. McCAMPBELL:

"This is a statement of my willingness to provide the comfortable home and support for you, as heretofore, according to my means.      J. H. R. McCAMPBELL,"
a copy of which he made and retained. He never communicated with her otherwise after she left him nor did he call to see or inquire after his child. In reply to the

complainant's letter the respondent sent to him the following:

"December 11, 1912.

"DEAR REID:

"I am willing to live with you in the comfortable home which you speak of in the letter which you wrote to me.

"If you will provide that home I will be glad to go with you wherever it is. But want that home to be separate from our relations. Your wife,

"EFFIE McN. McCAMPBELL,"

but no reply to it was received. The respondent declared her desire to live with her husband in a home of their own and only objected to a residence in a room in the home of his father. No effort was made to procure any other place nor did the complainant take any steps to modify the conditions existing there or to relieve the mind of his wife in regard to the discomfort she experienced. Having the care of her young child and a part at least of the housekeeping to look after she was entitled to consideration from her husband and this she seems not to have had for the letter which he wrote to her creates a strong impression that he was then laying grounds for the proceeding which he afterward brought. It cannot be considered a communication likely to influence his wife to return to the place which she considered so unsatisfactory. The complainant is a dentist by profession and the evidence shows his income to be sufficient to maintain a home. His disposition to assist in maintaining his father's home is creditable to him but his first obligation is to his wife and child, and it is at least due to her that he make an effort to create a situation which will have a tendency to make their married life happy. A careful examination of the evidence convinces us that complainant has failed to present such evidence as would warrant a decree in his favor.

The decree is affirmed.