Hill, Appellant, v. Hill.

Argued April 10, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

A. B. *Jobson*, of *Breene & Jobson*, for appellant.—
Respondent wilfully and maliciously without reasonable cause deserted libellant for a period of more than two years: Whelan v. Whelan, 183 Pa. 293; Sternberg v. Sternberg, 73 Pa. Superior Ct. 328.

There was no legal justification or reasonable cause justifying respondent in leaving the home of libellant: Benscoter v. Benscoter, 20 Dist. 349; Reynolds v. Reynolds, 62 Pa. Superior Ct. 280; McCampbell v. McCampbell, 64 Pa. Superior Ct. 143; Van Dyke v. Van Dyke, 135 Pa. 459; Detrick's Appeal, 117 Pa. 452.

Libellant did not acquiesce in respondent's withdrawal: McIntyre v. McIntyre, 92 Pa. Superior Ct. 310; Middleton v. Middleton, 187 Pa. 612.

No book or appearance for appellee.

OPINION BY GAWTHROP, J., July 2, 1929:

This is an action of divorce brought by the husband on the ground of desertion. The opinion filed by the learned court below in dismissing the libel is so satisfactory that we shall freely adopt excerpts therefrom in approving the conclusion reached.

From a review of the evidence it appears that there is little dispute as to the material facts. The parties were married September 19, 1921. The husband took his wife to live with his parents in their home in Oil City, Pennsylvania. The family of the parents con-

sisted of the father, mother, and an adult daughter. They all ate at the same table, but libellant and respondent had two rooms on the second floor for their use. Respondent aided in the general house work. Little, if any, difficulty arose between respondent and the members of libellant's family. In the course of time a baby was born and died in infancy. The husband testified that "in the main" he and his wife "got along first rate;" that he had musical talent; that rehearsals took him out in the evenings; that his wife always refused to accompany him, although he invited her to go; that they never had any words over his being out of the home in the evenings until "the night before she left me;" that on the evening of Sunday, April 22, 1923, he received a telephone call requesting him to go to Franklin, Pennsylvania, the following evening to get some music which he was to sing at an entertainment to be given in that city at a later date; that a verbal altercation between the parties ensued, hot words being said by each. The wife said: "I am not going to take that kind of talk, I don't have to stand for it; I will leave." She got a traveling bag, packed some of her clothes into it and left the house, going to the home of a sister. The husband and his mother and sister testified that they asked her to stay. She refused. About a week later she went back to the Hill home accompanied by a brother and stated that she desired to get the remainder of her clothes. He asked her "to please stay." She remained all night. In the morning he got up and went to his work, leaving her in bed. When she got up she again left the house, leaving word asking her husband to come to see her that evening at her sister's house. He went to see her that evening. They talked matters over and he asked her to go back home with him. She refused to go back to his father's home to live and he took her out that night to another place.

Later he returned to his own home. He told her "the latch was always out, she could come when she wanted to." On cross-examination he admitted that it was understood between them prior to their marriage, and after their marriage, that their residence at his father's home was a temporary affair, and that as soon as he was financially able they would get a separate home and live there. His excuse for failing to leave his parents' home was that he could not afford to do so. He admitted that he never went to see his wife again; never called her on the telephone or wrote her a letter, although they lived in the same town; never offered to furnish her with a place to live other than at his parents' home; that after he filed the libel she called him on the telephone and asked him to stop the proceeding; that he refused to do so; that he said: "For five years we have been apart now and you have made no effort to come back after I begged you to come back and wanted to take you back. The last time I saw you I told you when I left you there that the latch was always on the outside for you to come back to where you lived so that we could start again and get some place." He admitted also that in that conversation, when she asked him why he wanted a divorce, he told her that he wanted his freedom. The wife testified that on at least two occasions during the time they lived together she asked her husband if he intended to live up to his agreement made before they were married to provide a separate home, and that he said he would not; that she said: "There is not anything for me to do but get out;" and that he said: "That is up to you."

After reading all the testimony we readily come to the conclusion reached by the court below, that the respondent "did not leave libellant with intent to desert him; that there was legal justification for her action in leaving the home of their domicile; that re-

spondent manifested a proper spirit in seeking a conference with her husband in view of arranging a home for themselves alone, and that her requests were not unreasonable; and that libellant by his refusal to show any inclination, evidenced by anything actually done to that end, towards providing a separate, independent home for himself and wife, signified an acquiescence in her withdrawal from his society and marital relationship.''

It is an admitted fact that the wife was demanding a separate home, away from that of his parents, and at all times after the separation was willing to return to her husband if he procured it. She proposed getting furnished rooms in which to live alone, and as he was earning enough to afford it, she had a right to have it. He refused, and since the day of the alleged desertion has made no overtures to have her return to him at such a place. His disposition to help his parents is creditable to him, but his first obligation is to his wife. The court below well said that two years is a reasonable time within which to begin preparations for a home of his own, in which she might be in control of domestic affairs; and that she was justified in refusing to return to his parents' home; and that he seemed content to consider that their marital relations should end at the conference with his wife in her sister's home in April, 1923, arranged by her, and has acted accordingly, and acquiesced in the continuance of the separation.

To sustain an action of divorce for desertion, it is necessary to prove that the separation was not only wilful and malicious on the part of the respondent, but that it continued so to be, and that it was without the consent or encouragement of the libellant. The intent to desert must have been wilfully and maliciously persisted in without cause for two years: McCampbell v. McCampbell, 64 Pa. Superior Ct. 143. It is re-

butted by evidence that the separation is encouraged or acquiesced in by the other party: Heikes v. Heikes, 90 Pa. Superior Ct. 312, 317; Price v. Price, 83 Pa. Superior Ct. 446. We are not satisfied by the evidence that it convicts the respondent of wilful and malicious desertion.

The decree is affirmed.