## Alexander *v.* Alexander, Appellant.

Argued December 9, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*William T. Connor*, and with him *John R. K. Scott*, for appellant.

*Edward F. Hitchcock*, for appellee.

OPINION BY TREXLER, P. J., February 27, 1931:

This is a suit in divorce. The parties were married December 18, 1922. Libellant was an officer in the United States Navy. After their marriage, they resided at various places until May 6, 1926, when he was ordered to Port au Prince, Haiti, and there they resided until July 24, 1926, on which day the desertion charged in the libel is said to have occurred.

The original libel charged desertion, but an amended libel in addition to desertion, alleged adultery at various times therein set forth. The master came to the conclusion that there was no proof of adultery and this conclusion was fully warranted by the absence of testimony sustaining the charge and further attention need not be paid to this branch of the case.

The conclusion of the master as to the desertion was that "from our observation of the parties and their manner of testifying" that both parties were at fault in the quarrels and disputes throughout their marital life, but that there is insufficient convincing evidence that libellant's conduct toward respondent was such as to justify her in leaving libellant. We may adopt this finding of the master and thus will be relieved of any reference to matters preceding the alleged desertion.

When respondent left libellant at Port au Prince, the libellant signed the following paper:

"Port au Prince, Haiti,
July 24, 1926.

To whom it may concern:

I hereby declare and affirm that from July 30, 1926, and thereafter, I will pay to my wife, Lerline E. Alexander, one-half of my salary as an officer of the United States Navy.

In the event that she (my wife) secures a separation, divorce, etc., I will continue to pay her one-half of my salary until she is married to another man. The money mentioned above will be paid by monthly government allotment.

She will also be sole beneficiary to all of my life insurance until she marries another man.

The half of my salary as above stated will be paid to my wife or my divorced wife regardless of rank in the United States Navy."

This denotes a consentable separation. The libel-

lant evidently aware of the gravity of this "declaration," sought to escape its effect by saying that his wife forced him to sign it. "She would not even promise that she would consider coming back until I had everything put in writing that she wanted me to," but alleges that notwithstanding the very evident purport of the writing, that there was no agreement express or implied that they should live separate and apart. It will be noted that the date of this agreement was the same on which the desertion is said to have taken place. After she left Haiti, he wrote many endearing letters to her in which he confessed his faults and asked forgiveness.

He testified that early in October he came to Norfolk, Virginia, staying at a hotel and tried to persuade his wife to come to Philadelphia and live with him. She told him that she had everything ready to get a divorce. She did, however, agree to suspend things temporarily and think it over. He then went to Philadelphia. He wrote a letter from Philadelphia on February 3rd, in which he stated that he had come to the conclusion that it was foolish to oppose a divorce and that he would do so no longer, that they could never live together. He stated, "I want you to go ahead and get your divorce on whatever grounds you choose, as long as you don't make it too black. But I do insist that there be no publicity, no mud-slinging or court squabbles. I will not oppose it, but I also will not appear in court or be bothered with letters from your lawyer. When the papers are ready I will sign them."

On March 24, 1928, she wrote from Norfolk inquiring about the reason of his lack of promptness in sending her the check and stated that he had said he had "such a peach of a room," so she was planning to spend Easter with him in Philadelphia, arriving at 5:00 A. M., Saturday, leaving Norfolk, Good Friday night, and upon asking him to arrange to meet her at the station, he replied, excusing his lack of prompt

payment of her support, that he very foolishly allowed himself "to be wheedled into signing a lot of fool papers," stating that he did not want her to come to Philadelphia, that it would only be a waste of time and money for her, that she would have to come on her own expenses and stop at a hotel and that he did not live at his old address and that he would only see her one time at her hotel and then, stating, "only to discuss divorce and settlement, but that can be done by letter just as well, so you would be rather foolish to come," and concluded, "I am willing to pay as much as I can toward the divorce expenses." This, it will be noticed, occurred within two years after the alleged desertion.

When a wife willfully deserts her husband, he may not be required to try to get her back. That depends upon the circumstances in each case. He may in some cases let matters rest and after two years, can get his divorce, but within that time, the wife has the right to resume marital relations. She may not for the mere purpose of interrupting the running of the time, make offers of reconciliation which are not bona fide, but only employed as a method of breaking the desertion. In the present case, the master found that the wife's offer to come to Philadelphia was not to resume relations and was not bona fide. However, this question does not arise when the husband shuts the door on the respondent and urges her to get a divorce and proffers her his aid in obtaining it. While the offer to return should be bona fide, his willingness to resume marriage must also be present, and when he consents to the separation and urges the other party to get a divorce, his right of action, when based upon desertion, fails. What may have been desertion in its inception, has then become separation with mutual consent within two years: Neagley v. Neagley, 59 Pa. Superior Ct. 565; McGowan v. McGowan, 98 Pa. Superior Ct. 318; Thompson v. Thompson, 50 Pa. Superior Ct. 159.

The intent to desert is rebutted by evidence that the separation is encouraged or acquiesced in by the other party: Heikes v. Heikes, 90 Pa. Superior Ct. 312; Price v. Price, 83 Pa. Superior Ct. 446; McCampbell v. McCampbell, 64 Pa. Superior Ct. 143. We think it clear that the uncontradicted proof furnished in writing by the libellant himself brings him clearly within the line of cases above referred to and the divorce must be refused.

The decree of the lower court granting the divorce is reversed, the appellee to pay the costs.