Noden, Appellant, v. Noden.

514

Argued November 23, 1933.

Be-
fore Trexler, P. J., Keller, Cunningham, Baldrige,
Stadtfeld and James, JJ.

*Thomas A. Curran,* for appellant.

*Henry G. Sweney,* for appellee.

Opinion by James, J., February 1, 1934:
On June 3, 1932, libellant presented his libel setting
forth that on August 16, 1929 respondent deserted him.
An answer was filed by respondent alleging cruel and

barbarous treatment and such indignities as to render her condition intolerable and life burdensome. A master was appointed, testimony was taken and a report made by the master recommending the divorce on the grounds of desertion. Exceptions were filed which were sustained by the court and the libel was dismissed.

Elmer J. Noden and Bertha Myers Noden were married at Chester on March 8, 1919. The libellant, aged 32, was a widower with two children, aged 8 and 10 years. The respondent was a spinster, aged 32. Libellant was employed as a foundry man at the time of marriage, but some time later entered the postal service and was so engaged at the time the libel was filed. Respondent was engaged as a bookkeeper and continued her employment until the fall of 1923. A child was born and died on June 6, 1924. Several months later respondent resumed her work as a bookkeeper although not continuously until about a year before the separation. Altogether she was employed about seven and one-half years of her married life and in addition to her employment as a bookkeeper she performed most of the household work.

The testimony having any pertinent bearing on the issue is found in the testimony of libellant and respondent. Libellant largely blames their unhappiness on his wife's highly nervous condition, her desire for money and her dislike for household work. His chief complaint was as to quarrels, arguments and continuous talk that caused him to leave the house to seek peace and quiet. He asserts, however, that the argument was usually resumed upon his return to their home. On two prior occasions the wife left the home and stayed with her mother but each time she returned voluntarily. On August 16, 1929, early in the evening, an argument arose concerning the payment of some money to a huckster. Respondent stated that she had no money and he claimed that the money was

upstairs in a bureau drawer. Libellant testified that respondent called him various forms of liars and that finally the money was found upstairs; that she continued to storm and rage throughout the evening meal and later told libellant, "I am going away and I am not coming back." Shortly afterwards, libellant went out and when he returned his wife had left. He testified that he met her on various occasions and asked her to return home, which she refused to do stating she was very well satisfied and did not intend to come back. Libellant maintained the home, which was in their joint names, for two years or more until it was sold under an agreement and purchased for the benefit of the respondent.

A short time after the separation, a conference was had between the parties and their respective counsel concerning an allowance for support but no agreement was reached. A warrant was subsequently issued when by agreement an order of court was made directing the payment of $8 per week to the respondent.

Respondent's testimony although not very clear as to what actually took place on the evening of her departure, shows a course of treatment prior thereto finally culminating in her leaving on the day in question which consisted of her husband striking her once, kicking her out of bed, slapping her face the Saturday before the separation, hitting her and knocking off her glasses; "that he got pouty spells and would not speak to her and when he did he would yell at her." We are not convinced from the testimony of the respondent that the acts committed consisted of cruel and barbarous treatment or indignities of such a nature as to render her condition of life intolerable but the attitude of the libellant clearly shows he was perfectly satisfied and in some measure, at least, encouraged his wife to remain away after the separation of August 16, 1929. At the conference held between counsel and the parties it appears that the wife had

offered to return if he would treat her right, of which libellant has no recollection. The testimony further shows that on several occasions after the separation the wife returned to the home and took some articles which she claimed belonged to her, at which times the libellant was present but no discussion was had as to the resumption of marital relations; that she called him on the telephone and wanted to come back, of which fact he has no recollection; and that on several occasions they went riding in automobiles into the country. Respondent testified positively that on occasions they cohabited together which, however, is denied by the libellant, and that she has been and is willing to return and resume marital relations.

Although a wife may leave a husband without his consent and against his wish and without abusive treatment on his part to justify her leaving, yet, if within two years, she returns and makes an offer in sincerity and good faith to live with him, and he refuses, such separation is not such a wilful and malicious desertion persisted in, without cause, for two years, as will entitle a husband to a divorce: Neagley v. Neagley, 59 Pa. Superior Ct. 565.

The testimony of the respondent as to the offer to return to live with libellant if he would treat her right, taken in connection with the rest of her testimony, we believe to be sufficient to overcome the testimony of the libellant that his wife did not offer to return. His failure to remember that at the conference between the parties and their respective counsel there was an offer made by the wife to return is rather significant and, taking both the testimony of the libellant and the respondent as a whole, we are convinced that she was ready and willing to return to her home during the two year period of separation.

To sustain an action of divorce for desertion, it is necessary to prove that the separation was not only wilful and malicious on the part of the respondent, but

that it continued so to be, and that it was without the consent or encouragement of the libellant. The intent to desert must have been wilfully and maliciously persisted in without cause for two years. It is rebutted by evidence that the separation is encouraged or acquiesced in by the other party: Hill v. Hill, 96 Pa. Superior Ct. 410.

We are convinced that this is not a proper case for separation of the bonds of matrimony. Arguments which arose by reason of the highly nervous condition of the wife aggravated, no doubt, by the teasing propensities which the libellant displayed, considered in the light of the fact that she had been a substantial producer to the income of the home for seven and one-half years of their married life, coupled with the acquiescence of the libellant within a period of a few weeks after the separation that a support order should be made against him, and their frequent meetings lead us to believe that he was not willing to accept her offers to return. Libellant stresses two notes written by him in February, 1930, as indicating his desire to resume marital relations. Both notes taken in conjunction with respondent's testimony clearly indicate that libellant was solely interested in having the court order removed, as in the letter of Tuesday he states "and I don't want you to fail to get in touch with them and have the order removed."

We have not discussed the testimony relating to their respective savings and the disposition of their joint property which we believe to be unnecessary in view of the above.

From a consideration and review of all the testimony we are persuaded that the libellant has not made out such a clear case of wilful and malicious desertion as in our independent judgment would justify us in reversing the order of the court below dismissing the libel.

Order affirmed at the cost of appellant.