Mertz *v.* Mertz, Appellant.

Argued March 15, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Wm. J. MacCarter, Jr.,* with him *Clement J. McGovern,* for appellant.

*Cornelius C. O'Brien,* of *Byron, Longbottom, Pape & O'Brien,* for appellee.

OPINION BY CUNNINGHAM, J., October 2, 1935:

The final decree in this divorce proceeding was granted the husband upon the ground that the wife's admitted withdrawal from their long-established home amounted to a "wilful and malicious desertion," within the meaning of "The Divorce Law" of May 2, 1929, P. L. 1237.

As required, in the absence of a jury trial, (Langeland v. Langeland, 108 Pa. Superior Ct. 375, 164 A. 816) we have, upon this appeal by the wife, considered all the evidence and have reached the independent conclusion that the decree should be affirmed.

The respondent defended upon two grounds: (1) That she had a "reasonable cause" for withdrawing, and (2) that, in any event, libellant encouraged and consented to the separation.

Under these contentions the evidence must be examined in the light of several well established principles of law.

The desertion which entitles an injured and innocent spouse to a divorce is "an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully

and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other": Ingersoll v. Ingersoll, 49 Pa. 249; Middleton v. Middleton, 187 Pa. 612, 41 A. 291; Conn v. Conn, 111 Pa. Superior Ct. 130, 169 A. 390. A mere separation, however, is not necessarily desertion; it must be without the consent or encouragement of the libellant: Neagley v. Neagley, 59 Pa. Superior Ct. 565, 571; Alexander v. Alexander, 100 Pa. Superior Ct. 566; Noden v. Noden, 111 Pa. Superior Ct. 513, 170 A. 465. But, when separation for the requisite period has been proven by the libellant and the other party claims justification for such action, the burden rests upon that party to prove consent or a reasonable cause: Detrick's App., 117 Pa. 452, 11 A. 882; Howe v. Howe, 16 Pa. Superior Ct. 193; Ingram v. Ingram, 58 Pa. Superior Ct. 522; Scholz v. Scholz, 113 Pa. Superior Ct. 359. Only such cause as would itself warrant a divorce is a reasonable and just cause for desertion: VanDyke v. VanDyke, 135 Pa. 459, 19 A. 1061; Hedderson v. Hedderson, 35 Pa. Superior Ct. 629; Rosa v. Rosa, 95 Pa. Superior Ct. 415. An apparently wilful and malicious intent to desert may be rebutted by evidence that the separation was encouraged by the other party or was by mutual consent: Price v. Price, 83 Pa. Superior Ct. 446; Heikes v. Heikes, 90 Pa. Superior Ct. 312, 317; Hill v. Hill, 96 Pa. Superior Ct. 410; Noden v. Noden, supra. Mere silent acquiescence, however, is not sufficient to establish consent; there must be shown some affirmative conduct amounting to participation, some evidence of a present mutual intention of the parties to separate and live apart: Murray v. Murray (No. 2), 80 Pa. Superior Ct. 575; Smith v. Smith, 85 Pa. Superior Ct. 74; McIntyre v. McIntyre, 92 Pa. Superior Ct. 310.

It is not necessary to review in detail the unduly

voluminous testimony, (more than 300 printed pages) with its references to numerous quarrels during a long period of domestic unhappiness. The parties were married in 1902 and resided in Pittsburgh—except for about eighteen months in Washington, D. C.—until 1921; libellant then secured a good position, which he still holds, at Lester, Pa. Deeming this a permanent job, he bought a house in Norwood, Delaware County, as a home for himself and his family, the title being placed in the joint names of the parties. Three children, all of whom are now of age, were born of the marriage. Although the testimony indicates the marriage was never a particularly happy one, no serious difficulties seem to have existed prior to the removal to Norwood, but from that time on contentions arose and culminated on February 17, 1928, when respondent, without informing libellant of her intention, left the home and has since indicated no purpose to return. Libellant has continued to live at the family home; he testified it is still open for respondent to return and that the key which she possesses will admit her to the house.

Not disputing these facts, respondent averred that her separation from the libellant was due to his cruel and barbarous treatment and to the indignities he offered to her person, and argued that the testimony shows he consented to and acquiesced in her withdrawal.

So far as respondent's allegations of cruel and barbarous treatment and indignities are concerned, we entirely agree with the conclusions of the master—who made a most careful and detailed review of the testimony—and of the court below that her evidence does not rise to the standard required to make out a just cause for desertion; it is not such as would warrant a divorce in her favor. Much of the testimony along this line related to quarrels growing out of the strictness with which the libellant attempted to regulate the con-

duct of the children while they were under age and living under the parental roof. While many of the regulations which libellant enforced—such as refusing to give them keys so that by arousing him to let them in he would know what time they came home, and forbidding the younger daughter to have protestant callers—were more strict than is now the custom in many homes, (and respondent's attitude toward such matters was quite liberal) the frequent disputes over this question certainly did not establish either cruel or barbarous treatment or such a settled course of hate or estrangement as is required for a divorce on the grounds of indignities to the person: Mathias v. Mathias, 114 Pa. Superior Ct. 444, 174 A. 821. The same may be said of other quarrels, many of them being of a more or less trivial nature. Both parties were to blame. As we stated in Altwater v. Altwater, 81 Pa. Superior Ct. 359, 361, "Domestic disputes which so frequently arise are not made a cause of divorce unless they have the magnitude and importance of actual personal violence, or the reasonable apprehension of it." This was not the case here.

Respondent further contends that she was forced to leave by reason of libellant's treatment of her immediately prior to the separation in reducing her weekly allowance for maintenance of the household to $10 a week, so that she did not have enough to eat, and by refusing to put coal in the house. In support of these allegations she points to a support order issued by the court of quarter sessions requiring libellant to pay her the sum of $15 a week. Such an order, while not conclusive, is, of course, some evidence of a prior desertion by the libellant, to overcome which countervailing proof is necessary: Kearns v. Kearns, 98 Pa. Superior Ct. 507; Loughney v. Loughney, 111 Pa. Superior Ct. 214. In the present instance, we think this burden has been met. Respondent admitted that she had reduced the

dinner which she provided for libellant down to beans and potatoes. Moreover, the evidence showed that in addition to the $10 a week which libellant was then giving her, he paid all the household bills, and that she was receiving money for board from two of the children. There was also a joint bank account in a local bank upon which respondent had authority to draw, and from which she did draw substantial sums during the previous year, depositing them in another bank in her own name. As to the matter of insufficient coal, it was shown by disinterested witnesses that at least five tons of coal had been supplied prior to the obtaining of the support order in the early part of February. In considering what weight should be given to the support order, it may be noted that over a year before the final separation respondent had left the home and remained away several days, when she "realized the mistake she had made" and returned. Some months before the final separation respondent drew money out of the joint account and deposited it in her own name. Six weeks before she left the family home she bought a trunk. Two weeks prior to her departure, and before the support order was issued, she arranged for work, which she took up immediately after her withdrawal. The day before she left she told a friend of her intention, but warned her not to inform her husband, and at no time did she disclose her intention to him. From this evidence it is difficult to escape the conclusion that the support order was obtained by her as part of a preconceived plan, gradually executed during a period of several months, to desert libellant, and that the support order was merely the final step. She frankly admitted that she would not have left at that time had it not been for the support order. Respondent's attitude during this period is indicated by her conduct on Christmas, when, although she knew the elder daughter (who was not usually at home) was preparing a special

dinner, she went to the home of friends for that meal without telling either her husband or her daughter. We think there was sufficient evidence of a wilful and malicious intent to desert.

Respondent's argument that libellant consented and acquiesced in the separation is based upon testimony that on numerous occasions, during quarrels, she threatened to leave, to which libellant would reply, "There is the door, you can leave if you want to." Such words, spoken as they were, in the heat of argument and on occasions stretching over a period of years, are insufficient to warrant the conclusion that respondent's final departure was with her husband's consent. The whole course of her conduct prior to leaving, as recounted above, negatives any inference that libellant acquiesced in her actions. Respondent also argues that the fact libellant has made no overtures to her to return indicates that he consented to the separation. This is not enough. At best it merely indicates silent acquiescence, which, as we have seen, is insufficient. Such negative evidence does not meet the requirement of the law that there must be proof of some affirmative conduct, amounting to participation in the separation.

Decree affirmed.