## Sternberg *v.* Sternberg, Appellant.

*Divorce—Desertion—Separation by consent.*

Desertion is an actual abandonment of the marital cohabitation, with an intent to desert, wilfully and maliciously persisted in without cause for two years.  The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other.  The guilty intent to desert is rebutted where the separation is encouraged by the other party or by mutual consent.  Until one or the other party destroys the prior status and revokes the consent by making a bona fide offer to resume marital relations which offer is refused, the separation must be regarded as consentable.

In an action for divorce on the ground of desertion where it appeared that the parties had been living with libellant's mother, and that respondent had been forced to leave the house by his mother-in-law with the libellant's consent; that he had afterwards made numerous requests to the libellant to come and live with him, which she had refused, the respondent cannot be deemed guilty of desertion and a decree granting a divorce will be reversed.

Argued October 30, 1919.  Appeal, No. 86, Oct. T., 1919, by respondent, from decree of C. P. No. 1, Phila. County, March T., 1917, No. 621, granting a divorce in the case of Jule Sternberg v. Marc Sternberg.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ.  Reversed.

Libel in divorce.

The facts are stated in the opinion of the Superior Court.

The case was referred to Harry T. Stoddard, as master, who recommended a divorce. On exceptions to the master's report the court overruled the exceptions and granted a divorce. Respondent appealed.

*Error assigned* was the order of the court.

*William A. Carr,* and with him *Robert P. Shick, W. Horace Hepburn* and *Sidney L. Krauss,* for appellant.

*Jerome Bennett,* and with him *Henry Wessel, Jr.,* and *Charles J. Weiss,* for appellee.

OPINION BY ORLADY, P. J., February 28, 1920:

The parties to this action were married in 1893, and lived at a number of places in Philadelphia until February, 1915, when they resided with the libellant's mother, at 1815 North Broad street. Prior to that date there does not appear to have been any dispute between them. While the husband was not thrifty in business and changed his occupation a number of times, the wife was sufficiently patient and loyal to follow him in his varied enterprises. The wife was forty-four, and the husband fifty-nine years of age. The incident out of which this controversy developed, occurred on February 23, 1915, when they resided, as boarders in the house of the wife's mother. During the progress of a game of poker, when the libellant was not present, a son of the parties aged about 13 years was in the room, and though not participating in the game was permitted by the different players who were sitting in to draw a card, or hold a hand for luck. It culminated "in his touching a card of one of the players which filled a straight and won the pot." This incensed the mother-in-law, and she became so bitter and vehement, that she unequivocally

ordered the respondent to leave her house, and after calling him a number of vile names, threatened to call a policeman to put his belongings out on the street. The wife returned home the following morning and was informed by the respondent of this occurrence, when he sought her advice as to what he should do.

From the testimony of disinterested witnesses, it was clearly shown that the mother-in-law, with the libellant's sister, were the sole cause of the controversy. Without passing on the ethics of the game, as it was played, the unquestioned fact remains, that the mother-in-law ordered the respondent from her house, and when the wife was told of this by her husband, she replied, "I do not know what else to tell you to do. It is the only thing left for you, and as soon as you provide a home for me I will be glad to come and live with you." The wife and boy remained. The husband left pursuant to the direction of the libellant's mother, and went to New York. No other course was open to him than to leave the house. From the facts of this incident, the court is called upon to determine whether this enforced separation, induced by outside parties, on February 23, 1915, was a wilful and malicious desertion upon the part of the respondent.

It has been so frequently held, that a mere separation is not a wilful and malicious desertion, that it is not necessary to cite further authority than Middleton v. Middleton, 187 Pa. 612; Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241, and the authorities cited therein.

The technical question was carefully reviewed by RICE, P. J., in Neagley v. Neagley, 59 Pa. Superior Ct. 565, in which it is held, "The law on the subject is clear. Desertion is an actual abandonment of the marital cohabitation, with an intent to desert, wilfully and maliciously persisted in without cause for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other. The guilty intent to desert is rebutted where the separation is encouraged by the other party or by mutual

consent. Until one or the other party destroys the prior status and revokes the consent by making a bona fide offer to resume marital relations which offer is refused, the separation must be regarded as consentable."

The subsequent attitude of the wife is evidenced by the following: "Q. Did you ever ask him to provide a home for you? A. No, I never asked him to provide a home." In June, 1916, as a peace offering, the husband sent to her by their son, a birthday gift of 43 roses, several boxes of candy and a check for $43. In reply to which, on July first, 1916, she wrote in part as follows: "I have decided and am determined, to live my life as I have done in the past fifteen months, alone. You know as well as I do, that we are both much happier apart." She accepted the roses and candy, tore up the check, and requested her son to inform his father "that she was accepting no money or money value as a present or otherwise, from my father ever." The son further testified: "Q. What, if anything, was said between you and your mother about them living together? A. I told her my father wanted to know whether she would come to New York, or whether he should come to Philadelphia and provide a home. Also if she wanted, he would give her $15 a week or as much more as she wanted for her support. Q. What was her reply to that? A. She told me she would not accept any money or money value as a gift or otherwise. Q. What did she say about living together? A. She said she would rather go her own way."

The master states that the testimony "was almost hopelessly conflicting," but as a conclusion of fact found, "that the desertion alleged in the libel and testified to by the libellant, occurred on February 23, 1915, and that it was wilful, malicious and without legal justification, and has continued and persisted in since that date for more than two years," and recommended that the divorce be granted. This report was followed by excep-

tions, which were dismissed by the court below, and a decree entered on the ground of desertion. The libel was amended after being filed by adding an additional cause, "indignities to the person of the libellant as to render her condition intolerable and life burdensome, and compelling her to withdraw from his home and family," but no testimony was adduced in support of this, and it was not considered by the master or the court below.

The record is unnecessarily cumbered with nearly 500 pages of printed matter, and while it contains much of irrelevant and immaterial testimony, we have carefully considered it all. The supporting testimony of the wife's sister is so charged with personal bitterness against the respondent, and so extravagant in statement, that it is entitled to but slight consideration. From the testimony of the wife alone, we conclude that she has failed entirely to meet the requirements of the law to sustain the libel. There is no testimony to warrant the conclusion that there was any desertion by the husband on February 23, 1915, when he was practically ejected from the boarding house in which they resided. His withdrawal from the house, under the circumstances was approved by the wife, and her subsequent declaration of intention that she did not care to resume the marital relation and refusal of financial aid, places her case clearly outside the statutory requirements for a divorce on the ground she alleges.

It is not necessary to consider a number of other questions that are raised, as we base our conclusion on the lack of proof of malicious desertion, persisted in for two years.

The decree of the court below is reversed, the costs to be paid by the appellee.