# Perry v. Perry, Appellant.

*Divorce — Separation by consent—Desertion—Evidence—Sufficiency—Refusal of libellant to cohabit.*

Proof of separation, by mutual consent, immediately after the parties were married by a justice of the peace is not sufficient to sustain a decree of divorce on the ground of desertion, where the uncontradicted evidence of the respondent establishes repeated efforts on his part to induce the libellant to live with him, and the testimony of the libellant is that she never cohabited, and never intended to cohabit, with the respondent until after a religious ceremony.

Argued October 17, 1921. Appeal, No. 171, Oct. T., 1921, by respondent, from decree of C. P. No. 1, Phila. Co., Dec. T., 1919, No. 412, granting a divorce, in the case of Bella Perry v. Morris Perry. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Libel in divorce. Before PATTERSON, J.

The case was referred to Thomas Boylan, Esq., as master, who recommended that a decree of divorce be granted.

The opinion of the Superior Court states the case.

On exceptions to the master's report, the court dismissed the exceptions, and entered a decree of divorce. Respondent appealed.

*Errors assigned* were the decree of the court and its action dismissing the exceptions.

*A. E. Hurshman,* for appellant.

*James Gay Gordon,* and with him *Isadore Stern,* for appellee.

OPINION BY TREXLER, J., March 3, 1922:

The ground for the divorce is willful and malicious desertion. The case is peculiar. The parties to the marriage were Hebrews. They reside in Philadelphia and were married by a justice of the peace in Norristown. Neither of the parties regarded the civil ceremony as having been performed in accordance with the requirements of their faith, but considered a religious ceremony necessary. Whatever their views were, we must regard the civil ceremony as binding upon them and imposing the obligations recognized by law. Both parties state there was no cohabitation. The master admits the case is not without difficulties but, in his opinion the weight of the testimony is on the side of the libellant. "He comes all the more readily to this conclusion from the testimony of both parties, as to the reasons for the hasty marriage and as to the financial aspects of the engagement and marriage." He regards the respondent's failure to make any personal effort to see his wife between August, 1917, to what was perhaps an accidental meeting in November, 1919, after the beginning of the suit, as being persuasive against the respondent. He fixes the last interview on August, 1917, as the beginning of a willful and malicious desertion.

The circumstances attending the marriage give color to the assertion that it was performed in order to afford the respondent the means of escaping the draft. He, however, denies this. Why should they have a ceremony which neither regards as binding, unless they have some such purpose in view? It does not, however, become the

libellant to discredit him on this account.  She joined in the scheme.

The financial aspects of the engagement lose considerable of their mercenary character, when we learn that on the performance of the Jewish ceremony the bride was to get two thousand dollars as a wedding dowry, and this fact was recognized during their engagement, the mother stating that when they got married, she would give them a gift.  Very naturally he was disappointed.  He states that he expected the money, but that it should not be his money but his wife's money and it would be useful to him in his business.  This demand on his part for money, seems to be the principal argument offered by the libellant and she assigns it as the cause for the friction arising between the parties, but, as we will show hereafter, it seems he abandoned any demand on this account.

As to the respondent's failure to make any personal effort to see his wife, it requires no great acumen to discover that his visits to the home of his bride did not meet with such welcome as to encourage repetition.  We have the fact that he did send several friends to his wife's home with a message to his wife that she should come and live with him.  On these occasions the statements of the mother which barred the way to the reconciliation of the parties, were allowed to pass by the daughter, the libellant, without objection.  In addition to this, we have the undoubted proof that four letters, which the husband wrote to his wife, asking her to come and live with him and in which no request is made for money and which letters were properly addressed to her, were never given to her by the other members of her family.  Although she never received the letters and cannot be charged with the knowledge of their contents, they do furnish an important element as showing his state of mind and go far in convincing us that his absence was neither willful nor malicious.  On the other hand it may furnish the true reason for the disagreement between this couple, in that her family did not turn over to his

wife the letters which he sent to her. The opposition of her relatives may have been the cause of their differences. She never made any effort to reach him. She never asked him for any support. She never sent anyone to him. In this respect, instead of emphasizing his indifference, the master might have found that the shoe fitted her better than him. There seems to have been a consentable separation for some time. Both parties looked forward to a religious ceremony. Refusal of either to join in such a ceremony could hardly be considered desertion. It would be an anomaly to hold that refusal to marry, when the parties are already married, would constitute desertion. It may produce a situation, which in the forum of conscience may justify a refusal to cohabit. The libellant, although already married, failed to realize the fact and testified that she was not ready to get married. This suit seems to be an effort on her part to get rid of this unfortunate engagement which was lightly made and lightly regarded and which she now regrets. From the standpoint of her religion, she may be justified in trying to rid herself of her contract; but from the position which we must necessarily take, we do not feel that we can aid her.

The judgment of the lower court is reversed, and the libel is dismissed at the costs of the appellee.