Thomas, Appellant, *v*. Thomas.

Argued April 25, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*E. J. McKenna,* and with him *E. E. McMonigle,* for appellant.—There was sufficient evidence to prove the charge of wilful and malicious desertion: Ingersoll v. Ingersoll, 49 Pa. 249; Middleton v. Middleton, 187 Pa. 612; McIntyre v. McIntyre, 92 Pa. Superior Ct. 310.

There was no evidence of reasonable cause for respondent's leaving her husband's home: Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290; White v. White, 41 York 137; May v. May, 62 Pa. 206.

*Francis Taptich,* for appellee.—The evidence does not establish wilful and malicious desertion: Allen v. Allen, 194 Pa. 419; Wilcox v. Wilcox, 46 Pa. C. C. 620; Bracken v. Bracken, 77 Pa. Superior Ct. 219.

Opinion by LINN, J., July 2, 1929:

A divorce was refused and libellant has appealed. He alleges desertion March 2, 1926. The parties were married in 1922; each had been married before and had grown children by a former spouse. When the evidence was taken he was 63 and she about 60. He was a laborer earning laborer's wages. She filed an answer to his libel admitting the separation but denying desertion and alleging as justification for leaving, cruel and barbarous treatment and indignities rendering her condition intolerable and life burdensome, thereby forcing her to withdraw. Libellant filed a replication denying the averments of the answer. By such an answer "the burden of proof was ....... shifted as all the authorities declare, and it became incumbent on respondent to establish by the preponderance of the evidence, a state of facts that would entitle her to a

decree of divorce on the grounds advanced in her answer above quoted'': Ingram v. Ingram, 58 Pa. Superior Ct. 522; Renard v. Renard, 60 Pa. Superior Ct. 386.

This burden of proof she has not sustained. There is no credible evidence in the case to support her averment of conduct that would warrant granting a divorce to her if she had filed the libel on either of the grounds specified in her answer; as it is well settled that unless the evidence reaches that measure the separation is not justified, we lay it aside: Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290, 296; Ingram v. Ingram, supra; Cassler v. Cassler, — Pa. Superior Ct. —, 11 Adv. 149, 152. Though a respondent may fail to prove such averment, the record must still show a case within the statute before a libellant will be entitled to relief, for a record may show a consentable separation or even collusion, either of which would of course bar a decree; we therefore examine the record to see whether a case is made out.

In ascertaining the facts in divorce cases (not tried by a jury) we find corroborative evidence of witnesses helpful in weighing assertions and denials. In this case the corroboration, both by witnesses and surrounding circumstances, is all with the libellant; against that body of evidence respondent stands alone, with her credibility much shaken, if not destroyed.

When they were married, she moved what furniture she had to his home, then already furnished in a house owned and occupied by him prior thereto. About 60 days afterwards, at her request he gave her $1,000. For about 15 months, she collected from his tenant (the house was a double house, one part being rented and one part occupied by them) $13 a month and retained it; she admits receiving those sums. In addition he gave her $10 or $15 a month. We mention these admitted facts in passing because she testified that ''he

didn't give me enough money for my keep." She also contends that she was not adequately provided with food and clothes. As to food, the libellant and his son —aged 23—who lived with them—testified that the household was adequately supplied and that respondent had unlimited credit at a neighboring grocer's and meat shop. This shopkeeper was called and at some length described that respondent dealt at his shop and ran monthly bills ranging from $40 to $47; that libellant paid the book account at the end of each month; that if the book was not immediately available he gave her credit and that libellant always paid. Libellant testified that respondent "bought everything we need in the house." As to clothes, libellant and his son are again corroborated by neighbors who go into some detail about what respondent wore from time to time. In this connection we observe in the record that when a Mrs. Stefanko testified that libellant bought respondent "a nice coat" and to show her knowledge of the fact testified that respondent "said he did," the trial judge stated:

"Q. What she told won't do. I want to know how you know he bought it? Do you know it from him?

A. She said he bought it.

By the Court: That will not do. She can't say anything either one can tell you. You ought to know.

Q. You saw her wearing these clothes at any rate?

A. Sure, I did."

The evidence was relevant and there is no legal reason why the witness should not have been permitted to testify to what respondent told her on the subject.

It is unnecessary to go into further details on these items of money, food, and clothes; it is sufficient to say that we accept the corroborated evidence offered by libellant to the effect that respondent was adequately supplied with money, clothes and food (no other complaint relating to the housekeeping was made by her)

and disbelieve her uncorroborated statements as to inadequacy.

She testified that he beat her once, though she gives no evidence of the severity of the beating nor what led to it, if it occurred, nor when it took place; he denies it; as there is no corroboration of either, we lay the matter aside, as the single incident without much more concerning it would not justify the separation: Mendenhall v. Mendenhall, supra; Ingram v. Ingram, supra; Renard v. Renard, supra; Lynn v. Lynn, 76 Pa. Superior Ct. 428, 431.

On March 2, 1926,—the date of the desertion averred in the libel,—she and her husband had breakfast and she prepared his lunch and he went to work as usual. While he was at work, she moved out her furniture and some of his. Neighbors sent word to him to come home and, in his words: "I come home. I find the door open and had two fires in the stove been burning that high. I didn't know what she move out ......" Asked whether they had any quarrel he said "Didn't have no fight, no nothing, didn't say nothing, she want to move out or something like that ......." When she was asked why she left she said that during a period of 6 months he had called her abusive names and once scattered about some clothes that she was washing. There is no evidence of any dissatisfaction with his conduct at any time prior to the six months' period, and in view of the evidence against her in this case we attach little importance to her statements of conclusions.

As we have stated, libellant denied that he ever told her to leave, or that he beat her, and when called in rebuttal, the trial judge declined to hear more on the subject, saying "He has already said a dozen times he never beat her, never abused her and never swore at her. All we want to know, did you ever tell her to get out;" to which libellant replied "No, sir,"

He testified that early in 1924 she left him and after she had been away 4 days he went after her and she accompanied him home. In September, 1924, he says she left again, and after 3 days' absence returned without his having sought her. She admits these facts but gives no reason for leaving him. There is a difference in her evidence and his as to another matter in which he is corroborated and she is not, though again, it would seem that if her account were correct, she could have had corroboration. Very shortly after moving from his house in 1926 she had him arrested for non-support; according to libellant's account, he then proposed while in the magistrate's office that she return; it is thus stated in the record:

"A. I said, 'I want to take her back.' She didn't say nothing.

Q. You want to take her back?

A. Yes, sir, I waited for two years.

Q. Did you ever ask her after she left your house to come back?

A. In the court I asked her to come back.

Q. Did you talk to her or talk to the judge?

A. Talk to her.

Q. In what language did you talk to her?

A. She didn't say nothing.

Q. Did you ask her in English or in Russian?

A. Same time we had case in court.

Q. Did you use English language or Russian?

A. Slavish.

Q. Did you tell the court that you asked her to come back?

A. Yes, sir.

Q. What did you say to the court?

A. The court say if she come back give her a dollar or so a week. If she not come back, don't give her a cent.

Q. If I told you or showed you the court record

which says you are to take her back, give her eats and give her two dollars a week for personal use, is that true?

A. That is what they said in court that time, if she didn't come back, don't give her nothing.

Q. Did the court say not to give her anything if she don't come back?

A. The court said, 'don't give her nothing if she not come back.'

Q. You never asked Mrs. Thomas to come back to you after that?

A. I did."

Her account of the occurrence is that he was to come after her and did not. He is corroborated by a witness who was present; she is not. When she left libellant she took a key to the house with her; he continued to live there and states that she could have had access to his house by that key at any time.

We have set forth the evidence at perhaps unnecessary length, but with the purpose of showing that the corroboration of the libellant's evidence in essentials in which there are contradictions in respondent's account, leads us to find that the separation was unjustified, and, being persisted in for 2 years, was malicious and wilful desertion within the statute.

In her brief, respondent refers to the evidence of a witness who testifies that in April, 1928, libellant stated to the witness "that her term had passed and that he would not take her back." He was within his rights in saying that after the desertion had continued for two years.

The order dismissing the libel is reversed, the libel is re-instated, and the record is remitted with instructions to grant a decree of divorce as prayed for, libellant to pay the costs.