Scholz *v.* Scholz, Appellant.

Argued November 21, 1933.

Before
Keller, Cunningham, Baldrige, Stadtfeld and James, JJ.

*E. LeRoy Van Roden,* and with him *Joseph A. Rainville, Jr.,* for appellant.

*Solomon L. Hagy,* for appellee.

OPINION BY JAMES, J., July 13, 1934:

On October 1, 1931, James Harold Scholz filed his libel in divorce against Stella M. Scholz charging her with cruel and barbarous treatment, indignities to the person and malicious desertion on September 20, 1929. The master found that libellant had not sustained his charges of cruel and barbarous treatment and indignities to the person but recommended the divorce on the ground of desertion. Exceptions were filed which were later dismissed by the lower court and a final decree a. v. m. was entered on November 1, 1932, from which this appeal was taken.

Libellant and respondent were married on November 10, 1917. Two children were born as a result of the marriage. The parties lived together as husband and wife in Philadelphia until 1926 when they moved to 1917 Pembroke Avenue, East Lansdowne, Delaware County, where they lived until the respondent left on September 20, 1929. Libellant who was a dentist, maintained a professional office at his home in East Lansdowne and a Philadelphia office. After the separation, the libellant continued to live at the home in East Lansdowne until June, 1931, at which time he moved to Upper Darby.

Upon an examination of the entire record we are forced to conclude that the statement as set forth by the master in his report and as approved by the court below is a fair statement as found from the testimony, which statement is as follows: ''From a careful exami-

nation of the evidence, the master has reached the conclusion that there was fault on both sides, that the quarrels and disputes were not the result of the behavior of one of the parties alone, but that both took part in them and both were responsible, so that neither could obtain a divorce because of the other's conduct ......''

Our conclusion, therefore, as to the correctness of the entry of the final decree must relate to the incidents which occurred at or about the time of the departure of the respondent from her home.

On September 8, 1929, libellant and respondent had serious trouble over his attempting to move some book shelves from his den to the third floor that was to be occupied by his sister. The sister was a student at the University and had lived with them during the previous year and with whom respondent always had friendly relations.

On September 11, 1929, respondent arrested the libellant on the charge of insufficient support although from the evidence it appeared that libellant was paying his wife an average of $25 a week for the purchase of food, paying his mother-in-law $6 or $8 a week for preparing meals and also paying other household expenses. On September 18th, a support order of $45 per week was entered by agreement of the parties before Lewis Palmer, probation officer. On September 20th, respondent packed her belongings and most of the furniture and removed them to another home on Penrod Street, which she had rented the day the support order was entered. The day of the moving respondent informed libellant she was leaving. Libellant was present while respondent was packing and asked her what she was going to do, to which she replied, "You'll find out soon enough." He asked her, "How soon are the wagons going to come?" She informed him they would arrive about one o'clock, but

he had to leave for his Philadelphia office before that time. When he returned later in the afternoon the furniture had been taken away. He did not know where the respondent had moved until three weeks later although he inquired of friends and neighbors but did not ask her family because of their hostility toward him. Three weeks after the separation she called him by telephone and gave him her address so he could visit the children. He did visit them about once a week and on numerous occasions asked her to come back but she refused.

In March of 1931 he requested the probation officer to hold a meeting with his wife for the purpose of reducing the support order. Palmer, the probation officer, testified that Dr. Scholz "then talked about whether there was any possibility if he couldn't pay this order whether there was any possibility of a reconciliation. I got nowhere on that." Libellant testified that at that time he offered to take her back, but she refused. Deady, who was present, testified that Palmer suggested a reconciliation but that she refused, saying "He wants me to live in one part of the house, and I will in live in the other, and that I will not do." Scholz denies that he imposed such conditions,—"I offered her to come back to my home as we had always lived, and she absolutely refused to live under the same roof with me. I also offered to have her come back to my home, and she would have the first and second floors, and I would remain on the third floor as I had been doing previously. She said, 'No. I will not live under the same roof with you.'" She admits living apart from the libellant since her separation, and that she has never attempted to return. She denies that he ever suggested that she come back to live with him but if he had that she would not have considered it because he had threatened her life too much to live alone with him.

Respondent contends that the evidence offered by libellant was insufficient to sustain the charge of desertion, and further, that if there was a desertion the respondent was legally justified. In support of the former contention, respondent argues that the separation was consentable. With this we can not agree. This court is, of course, not bound by the findings of the master or the lower court (Hedderson v. Hedderson, 35 Pa. Superior Ct. 629, 634; Middleton v. Middleton, 187 Pa. 612) yet, in reviewing the evidence there is little dispute concerning the circumstances surrounding the departure of the respondent from the home of libellant on September 20, 1929. By her own testimony she admits that she had made her plans a "long time" before she left. Libellant had no notice of her intention to leave until he saw her packing her belongings. He then asked her where she was going, but her determined, inimical manner was evidenced by her reply that "I (meaning libellant) would find out soon enough from the court." Respondent stresses the fact that he then asked when the wagons were to come. In our opinion these facts do not indicate consent on his part. It does not appear that he asked her to remain, probably because libellant well knew, as clearly appears from the record, that the respondent was not one to arrange her plans in conformity with the desires of her husband. On the other hand, it is not required of him to resist her departure.

As was well said in the recent case of McIntyre v. McIntyre, 92 Pa. Superior Ct. 310, 313, "It is doubtless the law that the mutual consent which will prevent a divorce on the ground of desertion may be inferred from the conduct of the parties, but such an inference must have its support in some affirmative act of the complainant. None of the cases ...... holds that mere silence of the injured party is sufficient to establish consent. There must have been some con-

duct on the part of the complainant amounting to participation in the act of the respondent, and an acquiescence in his conduct; some evidence of a present mutual intention of the parties to separate and live apart." And further, "She was not under obligation to exert physical force or importunity to prevent the respondent from leaving her ......"

It is further urged by respondent that libellant made no effort at reconciliation, that whatever offer was made was subject to conditions to which she could not agree. Libellant testified that he made several offers, stating that they could use the whole house together, as formerly, or that she could take the first and second floors while he occupied the third. In regard to the offer made before the probation officer, there is some discrepancy in the evidence as to whether the offer was made by the libellant himself or through the medium of the probation officer. But it is not denied that the suggestion was made and that respondent refused. Moreover, she has said that even if an offer had been made she would have refused. The evidence satisfies us that one or more offers of reconciliation were made by libellant and refused by respondent. There is no evidence that respondent ever offered to return.

The respondent attempts to justify her departure from her husband's home by alleging that the libellant committed certain acts of cruelty and offered indignities to her person which compelled her to leave him. The testimony discloses that for some time they had lived unhappily but that her final departure had largely been influenced by the advice of a doctor by whom she had been treated. The doctor's testimony was flatly contradicted by the libellant. It is extremely difficult to reconcile the conflicting testimony but we are convinced that the preponderance of the

testimony does not establish justification for the departure of the respondent from her home.

It is a recognized rule that where the respondent attempts to justify her desertion by setting up cruel and barbarous treatment and indignities to the person, the burden of proof is upon the respondent who sets up these charges to establish by the preponderance of the evidence a state of facts that would entitle her to a decree of divorce on such ground: Thomas v. Thomas, 96 Pa. Superior Ct. 258; Ingram v. Ingram, 58 Pa. Superior Ct. 522; Renard v. Renard, 60 Pa. Superior Ct. 386.

Libellant maintained his home for nineteen months after his wife's departure, made weekly visits to the children, made offers of reconciliation himself and through the probation officer, during all of which time no effort was made by respondent to return.

Under all these circumstances we are convinced that the court below committed no error in granting the divorce.

Decree affirmed.