## Clements v. Clements

*Robert F. Irwin, Jr.*, for libellant.
*Henry M. Dubbs*, and *Henry M. Dubbs, Jr.*, for respondent.

STERN, P. J., October 17, 1934.—The parties to this divorce action were married in 1917. They lived happily together until 1921, when the first storm clouds began to appear on the horizon. However, it was not until the spring of 1923 that the situation became acute. On May 27, 1924, the respondent deserted, leaving behind her a note as follows: "Have gone to mother's. Regret that you have made it necessary, but I cannot stand this way of living any longer. The strain is wrecking my nerves and undermining my health."

The husband seeks a divorce because of the wife's desertion. The respondent admits that she left the libellant, but maintains, as set forth in her letter above quoted, that she was obliged to leave because of the libellant's conduct, and therefore that the desertion was not wilful and malicious.

The test as to justification for the desertion depends on whether the respondent could have obtained a divorce against the libellant. The burden of proof is upon a respondent, who sets up charges attempting to justify a desertion, to establish by the preponderance of the evidence a state of facts that would

entitle the respondent to a decree of divorce on such grounds: Scholz v. Scholz, 113 Pa. Superior Ct. 359.

We disagree with the master's conclusion that such a state of facts was not shown by the respondent. On the contrary, we are of opinion that the libellant was guilty of such a course of indignities to the respondent as to have entitled her to a divorce had she sought one, and therefore such as to justify her present defense.

The testimony covers over 400 pages, and it would serve no useful purpose to attempt to recite it at length in this opinion. It seems sufficient to say that in our opinion no self-respecting woman could or would have endured the situation which existed in the household of these parties for at least a year preceding the act of desertion, and which was brought about by the attitude of the libellant.

From 1921 to 1923, the relationship between the parties was intermittently unhappy, the disputes seeming to arise largely concerning money matters. Beginning in May of the latter year, the libellant adopted a course of conduct toward his wife which must have been intolerable. During the period of the entire year from then until the respondent left the libellant, the latter refused even to talk to the respondent. He refused to eat at the same table with her. He refused to share a common bedroom. He commanded her not to touch even his laundry. He advertised in the newspapers that he would not be responsible for her debts. He cut down her allowance and imposed money penalties upon her when she did something to displease him. He ignored her in all the social relations of life. He went out only by himself, and hardly so much as saw her from one week to another. In general, he treated her with withering and devastating contempt. All this followed upon a blunt statement which he had made to her a couple of years before that he no longer loved her. As the respondent vividly pictures the situation in her testimony: "He never addressed me, he never even bid me the time of the day when he entered the house. For a year at night I sat in the livingroom waiting until he came home, ever hoping he would speak to me—I sat there evening after evening waiting for him, and he never spoke to me or talked to me." Or, as the libellant himself frankly admitted: "While we were both living in the same house, we lived in different rooms and had no contact with each other at all."

We therefore have a situation where, at least for an entire year previous to the respondent leaving, the husband neither slept with her, ate with her, talked to her, went out with her socially, or showed any desire whatever for her companionship, but, on the contrary, made plain to her that, so far from loving her or even being willing to be civil to her, he had no feeling toward her other than one of hatred and detestation. One looks in vain through the testimony to discover actions or conduct on the part of the respondent which justified such an attitude. The libellant does not even charge the respondent with any serious misconduct. Even if she handled money matters in the way he alleges she did, this did not warrant a boycotting of the respondent in all the elementary relations and amenities of marital life.

It seems to the court that the respondent, in submitting to such a situation for so long a period, is to be commended for her patience and endurance, rather than penalized for finally leaving the libellant because, to quote her own language in her farewell note: "I cannot stand this way of living any longer." Each time that the libellant refused to talk to her or eat with her or recognize her as a human companion, he was guilty of an indignity to her. Moreover, a mental and spiritual separation brought about by him had occurred long before the physical withdrawal from the home.

The libellant denies some of the conduct attributed to him by the respondent,

but a reading of all the testimony convinces the court that the facts are as stated by the respondent and that her desertion of the libellant was not wilful and malicious. Therefore, the respondent's exceptions are sustained, and the libel is dismissed.