Doemling *v.* Doemling, Appellant.

Argued April 23, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Elverton H. Wicks,* for appellant.

*Jos. F. Weis,* of *Sherriff, Lindsay, Weis & Hutchinson,* for appellee.

OPINION BY RHODES, J., July 18, 1935:

This is an action of divorce instituted by the husband-libellant on January 24, 1933, on the ground of desertion. The lower court which heard the testimony granted a decree of divorce from which the respondent appealed.

At the time of their marriage on June 18, 1924, the libellant was a widower, fifty-two years of age, and the father of five children. The respondent was thirty-seven years of age. They lived in a house at 3465 Ligonier Street, Pittsburgh, Pa., owned by libellant, until August 18, 1925. For six months following their marriage, they got along without trouble. The respondent's brother boarded with them.

The testimony shows that on the evening of August 18, 1925, the respondent's brother, Alex Berner, started an argument at the supper table with his married niece, as a result of which a free-for-all fight ensued. Libellant's two sons held Mr. Berner on the floor while the libellant went for a policeman. A neighbor, who was called in by the libellant to keep things quiet while libellant looked for an officer, testified that the respondent picked up a chair and swung it twice at libellant's sons, and ordered the witness out of the house. The libellant returned with an officer who called a patrol

wagon. The libellant, his wife, the wife's brother, and the two boys were then put in the patrol wagon. Another neighbor informed the officer in charge that the libellant was not involved in the affair; whereupon the libellant was released. He immediately asked that his wife be released, and was told to get her out of the patrol wagon. He called for her to come out, but she refused to move.

When the libellant went to the police station to put up bail for his wife, she refused to go home with him, and told him that she had called someone else for that purpose. Respondent did not return home that night. She testified that she tried to get into the house between ten and eleven o'clock, but found it bolted from the inside; and that she supposed her husband had gone to work at that time.

Following the hearing on the next day, August 19, 1925, at which all were discharged, libellant asked his wife if she were going along home with him. She refused to go with him. A witness, Joseph Hufnagle, testified she said, "positively not ever." Three days later respondent and her brother came to the libellant's house with a truck and removed all her furniture. From that time on, the respondent lived with her brother and kept house for him in the same neighborhood as that of the libellant. After the alleged desertion on August 18, 1925, and up until the date of the filing of the libel, principally, however, prior to 1929, the libellant and respondent met and talked things over on various occasions on which the libellant made efforts to effect a reconciliation, but without success. The libellant was willing to have his wife return, and he endeavored to obtain some degree of harmony between his wife and his children. Her attitude, however, was demanding rather than conciliatory. She admitted that he had often asked her to come back.

The respondent claims that she left, following the

fight on August 18, 1925, because she was severely beaten by libellant's son in the course of that fight and forced to leave his home; and that her leaving did not amount to a wilful and malicious desertion without cause. It does not appear that the libellant did anything improper to the respondent. He did not cause her to be taken to the police station in the patrol wagon with the other participants in the fight in his home. Her obstinate attitude was manifested then, and also at the police station. As to these facts, and as to her refusal to return to their home, libellant was corroborated by the testimony of disinterested witnesses. Her testimony, however, falls far short of establishing such conduct, on the part of the libellant, as would justify her leaving him as she did. Where the respondent attempts to justify her desertion because of cruel and barbarous treatment or indignities to the person, the burden of proof is upon the respondent, who sets up these charges, to establish by the preponderance of the evidence a state of facts that would entitle her to a decree of divorce on such ground: Scholz v. Scholz, 113 Pa. Superior Ct. 359, 365, 173 A. 761, 763.

We think the weight of the testimony establishes the fact that the original separation was wilful and malicious on the part of the respondent, and that it was without the consent or encouragement of the libellant.

The respondent also contends that she offered to return within the two-year period, and hence the libellant is not entitled to a divorce on the ground of desertion. See Neagley v. Neagley, 59 Pa. Superior Ct. 565; Noden v. Noden, 111 Pa. Superior Ct. 513, 170 A. 465.

Her testimony discloses that her offers were always conditional upon the libellant's sending his sons away, or allowing her brother to return; and that if she returned she was going to be boss. She further testified that the libellant's first wife was one of her best friends;

that she knew his children very well before she married him; and that one of the reasons she married him was in order to take care of the children. As stated in Waggner v. Waggner, 112 Pa. Superior Ct. 382, 389, 171 A. 102, 104: "Her attitude was rather one of insisting upon the removal of conditions to which she objected but with which she was thoroughly familiar prior to her marriage." The presence of respondent's brother had not been conducive to family harmony. Even after the separation he attacked the libellant. The conciliatory attitude of the libellant was in marked contrast to the dictatorial attitude of the respondent during the years following the separation. The libellant was under no duty to accept her offers, which were coupled with unreasonable demands, and which, under the evidence in this case, could not have been made in sincerity and good faith.

Libellant testified that he had invited the respondent to return on several occasions; that, when she demanded a decent home, he invited her to come over and look at it again; that she never accepted his offers. Respondent lived with her husband in his home for fourteen months following their marriage and never made any complaint that the home was unsatisfactory. Her demands for a decent home apparently referred, not to the condition of the home, but rather to her desire to either get rid of libellant's children, or have her brother return with her.

We find no testimony showing cohabitation following the original desertion. Nevertheless, the respondent contends that cohabitation should be inferred from the fact that libellant often visited the respondent. Such an inference cannot be drawn in the face of positive testimony, uncontradicted by the respondent, that he never resumed marital relations with her following the original desertion.

We think that the evidence supports the contention

of the libellant, rather than the contention of the respondent. The libellant's testimony was corroborated in certain important details by the testimony of three disinterested witnesses, while the respondent's testimony stands alone, except for that of her brother, who was anything but a disinterested witness.

After a careful reading of the testimony in this case, we are of the opinion that the libellant has met the burden of proof required and shown a wilful and malicious desertion, without a reasonable cause, for and during the term and space of two years, on the part of the respondent.

The second assignment of error relates to the order of the court made for counsel fees, and the cost of printing the paper book of the appellant. Appellant contends that this is entirely inadequate. This is a matter that is largely within the sound discretion of the court below, and the appellate court will not reverse except for plain abuse of discretion. After an examination of the records, we cannot say that the court below abused its discretion in allowing a counsel fee of $50 to appellant, and also the cost of printing her paper book.

The order relative to counsel fees and costs is affirmed. The decree of the court below, granting a divorce to the libellant, is affirmed.