## Potter v. Potter

*John C. Motter*, for libellant.

RICE, P. J., Ocotber 18, 1941.—Plaintiff was a minor at the time this action was brought and has not yet arrived at full age. The action was originally brought in her own name alone, and later the style of the action was, without leave of court, amended so that plaintiff is "Geraldine Anna Potter, by her father and next friend, J. P. Reichert." Clearly, the style of the action is not in compliance with Pa. R. C. P. 2028(a), according to which it should be: "Geraldine Anna Potter, a minor, by J. P. Reichert, her guardian". Paragraph (b) of this same rule is also violated in that the libel, which is the initial pleading, does not state the name and address of the guardian and his relationship, if any, to the subject matter of the action and to the real plaintiff. What action should be taken by the court with respect to the failure of the plaintiff to comply with this rule is a question to be considered.

The Rules of Civil Procedure relating to "Minors as Parties" apply to actions of divorce. Rule 2026 says:

"As used in this chapter 'action' means any civil action or proceeding at law or in equity brought in or appealed to any court of record which is subject to these rules."

There is nothing in the definition of "action" here quoted which excludes a divorce action.

Section 25 of The Divorce Law of May 2, 1929, P. L. 1237, as amended by the Act of May 25, 1933, P. L. 1020, provides:

"In cases where the libellant is a minor, the libel shall be presented by a relative or next friend, and the affidavit thereto shall be taken by such minor libellant."

Pa. R. C. P. 2027 says:

"When a minor is party to an action he shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor."

Rule 2050, which suspends certain acts of assembly, does not specifically mention the said statutory provision as suspended, but paragraph 10 of the rule also

suspends "all other Acts or parts of Acts inconsistent with these rules to the extent of such inconsistency." The statutory requirement that a divorce action for a minor shall be presented by a relative or next friend is inconsistent with this rule and must be considered as suspended by this rule.

Pa. R. C. P. 131 reads: "Rules or parts of rules are in pari materia when they relate to the same proceedings or class of proceedings. Rules in pari materia shall be construed together, if possible, as one rule or one chapter of rules."

In deciding our question rules 2026 to 2050 should be considered together, since they all relate to the subject of minors as parties, and since they set forth what should or may be done under certain conditions. Rule 2031 provides for the selection and appointment of a guardian, by a minor plaintiff before the action is brought, or by the court after the action is brought, and this can be done without notice to the other party. Under this rule an adult party to an action has a right to have a guardian appointed for his minor adversary. Rule 2033 provides for the removal of a guardian, and notice to the adult party is not necessary. Rule 2034 states the procedure when the minority of a party is ascertained after an action is brought by or against a minor without representation. As soon as minority is discovered, a guardian may be appointed, and a finding, verdict, or judgment against a minor who was not represented may be vacated or set aside. Rule 2035 states:

"The non-representation of a minor plaintiff may not be assigned by a defendant as a ground for a non-suit, directed verdict, or judgment n. o. v., but may be assigned by the minor plaintiff as ground for a new trial when a setoff or counterclaim has been successfully asserted against the minor plaintiff."

In the commentary in section 2027-3 in Goodrich-Amram Civil Practice, it is said:

"The requirement that a minor party be represented must be observed and the minor will not be permitted to waive compliance with this rule. While the requirement of representation is mandatory, the failure to conform thereto is not fatal to the entire action, although an adverse judgment or verdict entered against a non-represented minor may be set aside if justice so requires."

In the commentary in section 2034 (d) -2 in Goodrich-Amram Civil Practice, it is said:

"If the finding, verdict or judgment is in favor of the unrepresented minor, the proceedings will not be set aside on the ground of the latter's non-representation. The losing party can not complain. He has lost the action on the merits and the non-representation of the minor is an immaterial fact. The minor can not complain. He has won the case."

The purpose of the requirement of representation of a minor is the protection of the estate and property of a minor from levies and attachments on awards or judgments against a minor which, if the minor had been properly represented and his interest taken care of, might not have been recovered. If the minor wins his case, apparently his rights were fully protected, unless he might have recovered more, if he had been properly represented. In a divorce case a minor plaintiff is divorced or not. If divorced, he wins his case completely and nothing more could have been accomplished by representation. We are, therefore, of the opinion that noncompliance with rule 2028 is not a fatal defect. We are also convinced that the style of the action and the libel may yet be amended to conform with rule 2028 and that such amendments may be made upon application to the court and without notice to defendant, as his rights are not in any way affected. On account of the ever-present possibility that a party to a divorce action may, at some future time, make an effort to have a decree of divorce opened and set aside

on account of some irregularity in the proceedings, that even plaintiff herself, after she becomes of full age, may repent her getting a divorce and try to have the decree set aside, claiming that she was too young, was unduly urged to get a divorce, and was not lawfully represented in the action, we believe that, since a decree has not yet been entered, it will be best that the style and the libel be amended to conform to this rule.

Section 17 of The Divorce Law provides: "In cases of wilful and malicious desertion, and absence from the habitation without reasonable cause, it shall be lawful for the injured and innocent spouse to exhibit his or her petition or libel to the court at any time not less than six months after such cause for divorce shall have taken place, but the case shall not proceed to a hearing until after the expiration of two years from the time at which such desertion took place."

These parties were married on August 22, 1939, and the date of desertion alleged in the libel is August 23, 1939. The master finds that the desertion took place on August 22, 1939, the date of their marriage, but from a reading of the testimony the court is of the opinion that the desertion, if there was any desertion, did not take place till some time in November 1939. If that be correct, then the hearing was held and the testimony was taken prematurely, because the above-quoted statutory provision requires that the case shall not proceed to a hearing until after the expiration of two years from the date of desertion. The importance of ascertaining this date is very apparent because the validity of the proceedings held by the master depends upon that date.

The testimony of libellant discloses that she and the respondent and another young couple took an automobile trip and arrived at Leesburg, Va., on August 22, 1939, where and when libellant and respondent were married to each other and the other couple was married by the same minister; that the two couples re-

turned the same day to the home of the parents of libellant in Penn Township, Perry County, about 7 p.m.; that she remained that night at her parents' home and her husband went away with the other couple; that respondent came subsequently three or four times a week to see her at her parents' home, remaining a few hours in the evening and leaving when her parents went to bed; that she never cohabited with her husband; that these visits of respondent continued for about three months; that about three months after her marriage she told her parents about her marriage; that her father then had a talk with respondent; that respondent told her at the church that her father had talked to him and asked him how he was going to provide for her and respondent said he had no way of providing for her; that, after this conversation with respondent at the church, she got into her car and went to her home and he went to his home; that she never saw him after that conversation and he never wrote to her; that he never offered to make a home for her; that they never talked about their marriage; that she was willing to go to housekeeping with him but he never asked her to do so, and that she never did or said anything to cause him not to provide a home for her, and that he never furnished her with any food, clothing, money, or anything. Frank J. Reichert, the father of libellant, testified that, about three months after her marriage, libellant told him about it early in November 1939; that respondent had been coming to see libellant three or four times a week and would stay till about 9 p.m., when the witness and his wife went to bed; that, on the first visit of respondent after the witness learned of the marriage, the witness asked respondent what they intended to do and respondent said: "I don't know," and the witness asked respondent if the latter had any plans for supporting his wife and respondent replied that he had none; and the witness asked respondent if he thought he would have any and respond-

ent replied that he had no plans to offer; and the witness suggested to respondent that the latter get a job, go to work, and support his wife and make a home for her and respondent replied he had no job and could not make any plans for her; that at no time did respondent offer any support of libellant, and that he had not seen respondent since.

The master, in his report, finds, among other things, as follows:

"Respondent never had any intention of providing a home for libellant or of even contributing to her maintenance and support. He deserted libellant the same day they were married, August 22, 1939, and by his admission three months later that he had no plans whatsoever for his wife showed that he had no intention from the time of his marriage to support her. Libellant gave respondent no cause to leave her."

The master does not give any other reasons for his findings and does not discuss the legal principles involved in a desertion case or cite or refer to any authorities.

In Sternberg v. Sternberg, 73 Pa. Superior Ct. 328, Hartner v. Hartner, 75 Pa. Superior Ct. 342, Perry v. Perry, 78 Pa. Superior Ct. 245, Capwell v. Capwell, 79 Pa. Superior Ct. 88, Maus v. Maus, 80 Pa. Superior Ct. 428, Murray v. Murray (No. 2), 80 Pa. Superior Ct. 575, Price v. Price, 83 Pa. Superior Ct. 446, McIntyre v. McIntyre, 92 Pa. Superior Ct. 310, Hort v. Hort, 111 Pa. Superior Ct. 119, Noden v. Noden, 111 Pa. Superior Ct. 513, Scholz v. Scholz, 113 Pa. Superior Ct. 359, Starr v. Starr, 134 Pa. Superior Ct. 497, Ewing v. Ewing, 140 Pa. Superior Ct. 448, Arnout's Estate, 283 Pa. 49, Mallory's Estate, 300 Pa. 217, and many other cases are contained many discussions as to the essential elements of desertion as a ground for divorce. Many of the cases speak of abandonment of matrimonial cohabitation, without the consent of the other party, with an intent to desert, wilfully and maliciously persisted

in without cause for two years, as desertion, but the statute couples desertion as thus defined with the absence of the guilty party from the habitation of the injured and innocent party. Section 10 of The Divorce Law provides:

"When a marriage has been heretofore or shall hereafter be contracted and celebrated between two persons, it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, . . . that the other spouse . . . (d) Shall have committed wilful and malicious desertion and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years; . . ."

The full import of this provision will be better understood if commas are inserted after the words "desertion" and "habitation". Thus, to constitute the ground for divorce set forth in this subparagraph 2, which is commonly called desertion, it is essential for libellant to prove (1) wilful and malicious desertion of respondent without a reasonable cause, for and during the space of two years, and (2) wilful and malicious absence from the habitation of libellant, without a reasonable cause, for and during the term and space of two years. The provision regarding the period of two years renders both desertion and absence continuing conditions, gives the deserter his locus pœnitentiæ, and makes it necessary to prove that both these two conditions persisted uninterruptedly as well as wilfully and maliciously for two years after the first original desertion. The courts have held that separation of the two parties, without more, is not desertion, that separation with the express or implied consent of libellant is not desertion, that silence alone does not signify consent to a separation, that consentable separation may ripen into desertion, and that desertion may, within two years, become mere separation if the deserter, in good faith, exercise his right of locus pœnitentiæ.

The failure of these parties to cohabit renders the case somewhat similar to that of Perry v. Perry, supra, in which the parties refrained from cohabitation because they desired a religious ceremony in addition to a civil ceremony. The testimony in the instant case does not show that the failure of the parties to cohabit was the fault, if fault it be, of either respondent or libellant or whether either refused to cohabit with the other, and we cannot find that respondent was responsible for their failure to cohabit. Whoever was responsible for such failure, it cannot be considered as an item or element of the case at its present stage. If it were important at this time, the burden would be on libellant to prove that respondent refused to cohabit with her.

The master finds that the desertion took place on the day of the marriage, but he does not, in our view of the matter, give a sufficient reason for his finding. In the same sentence in which this finding occurs and following the finding is the clause: ". . . and by his admission three months later that he had no plans whatsoever for his wife [he] showed that he had no intention from the time of his marriage to support her." It must be remembered that these parties, according to the testimony of libellant, did not consider marrying until the day of their marriage, after they started on the trip, and not until they were "dared" by the other couple to marry. It could hardly be expected of respondent that, without a regular job and likely with little money, he, a 19-year-old boy, should be able to formulate, within a few hours, the necessary plans to maintain the wife he would, before the end of the day, take unto himself. It frequently happens that young people marry heedlessly, impulsively, with little or no thought of the future, but surely malice cannot be imputed to them, and, even if there be malice before marriage, it cannot apply to an alleged desertion. These parties, having been married, came together, in the automobile of the other couple, back to the home of the parents of

libellant on the same day and arrived there about 7 p.m., libellant remained there, and respondent went away with the other couple. Leaving libellant at her parents' home could not be a desertion; there is no testimony of anything said or done at the time by responddent to show that he was separating himself from libellant with the intention to desert her. On the other hand, the testimony shows very plainly that, for a period of about three months thereafter, respondent visited his wife three or four times a week at her parents' home, remaining with her until they went to bed about 9 p.m., and his attentions to her were so assiduous that her father, as he testified, began to suspect that they were planning to get married. This home was the habitation of libellant, and how can it be said that, during the period of these visits, respondent absented himself from his wife's habitation? During this time they were not separated in the sense that the word is used in divorce law. The frequency of these visits is evidence of the friendly attitude of these spouses toward each other and negatives any idea that he had a feeling of malice toward her. This marriage is presumed as a matter of law to be lawful and valid, and the attitude of these parties toward their marriage, their failure to cohabit, his failure to support her and plan for their common habitation and their life together, cannot effect, to the slightest extent, the quality or quantity of proof necessary to sustain the libel. In the opinion of the court, the testimony clearly shows that respondent did not absent himself from the habitation of libellant until sometime in November 1939, at the earliest.

Hence, since the hearing before the master was held September 29, 1941, less than two years after the time when respondent absented himself from libellant's habitation, the hearing was held and the testimony taken too soon. In Brown v. Brown, 6 D. & C. 698, Judge Reno, under similar circumstances, made an order ex-

punging the report of the master from the records of the court. This would require erasing all record entries regarding the report and testimony and more or less mutilation of the record. All that is necessary is some action that will invalidate the report and the testimony and render them without any legal effect, and we think that can be accomplished by quashing or setting aside the report and the testimony and all proceedings had by or before the master.

The testimony of libellant shows that respondent was 19 years of age when they were married, but his birth date was not shown. This action was commenced on July 20, 1941, and there is a considerable possibility that respondent was yet a minor when this suit was started. If so, his minority, without his representation by a guardian in accordance with Pa. R. C. P. 2027 and 2028, will create a situation that may make trouble in the future, as he could take steps to have any decree of divorce opened and set aside. To prevent any such possibility there should be proof, if the case comes to a second hearing before the master, of the birth date of respondent by a birth certificate.

In taking this action with respect to the master's report we do not wish it to be understood that we have concluded that libellant is entitled to a divorce on the testimony. The court has doubts whether there was a desertion. The testimony is such that the parties may have separated by mutual consent. We do not pass judgment on the matter at this time. But, if the case comes to a second hearing, we desire that the master cross-examine libellant and her witnesses fully, as it is his right and duty to get all the facts.

There is, according to our views of the date of the alleged desertion, a material variance between the allegata and the probata, and the court will not refer the case back to the master until an amended libel to meet this defect and other defects pointed out to the attorney of libellant is filed, after leave of court obtained in the regular way.

## Order

And, now, October 18, 1941, the report of the master, the testimony taken by him, and all proceedings had by and before him are hereby set aside. Exception allowed.