## Berky, Appellant, *v.* Berky, Appellant.

Argued November 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Alexander Cooper* and *Melvin Schwartz,* with them
*Ben F. Wright,* and *Cooper, Goodman & Schwartz,* for
husband.

*Harold Gondelman,* with him *Albert A. Fiok,* for
wife.

OPINION BY FLOOD, J., January 16, 1962:

We have before us Mrs. Berky's appeals from orders
of the court below granting a decree in divorce to her
husband, dismissing her suit in divorce a mensa et
thoro, and dismissing her exceptions to the refusal of
the court below to issue a rule to show cause why the
proceedings in each of the cases should not be returned
to the master for the purpose of taking additional tes-
timony. Her husband has appealed from an order
granting her additional counsel fee in the sum of $750
and $750 for costs of appeal.

The complaints of both parties are based upon in-
dignities to the person. The matter was largely one
of credibility. The master believed the testimony of
the husband and disbelieved the wife insofar as she
contradicted him. The court approved the master's re-
port, basing its opinion as to credibility not only upon
the master's recommendation, but to some extent upon
the impression made upon the court when the parties
were before it on the wife's petition for alimony pen-
dente lite.

1. Mr. Berky testified that his wife began to ac-
cuse him of infidelity with one of his employes early
in their married life, that accusations of infidelity con-
tinued throughout the marriage, and that these accusa-
tions involved two employes and another girl whom he
specifically named and fifteen or twenty persons alto-
gether.

According to Mr. Berky, when his wife saw him in
conversation with another woman, she customarily ac-
cused him of flirting and whenever friends asked him

to bring his wife to their home, she immediately accused him of going to bed with the man's wife.

On one occasion Mrs. Berky produced a news photograph taken of a meeting at the Twin Coaches. She showed this photograph to her mother, stating that it showed Mr. Berky and one of his female employes together. Mr. Berky denied that he was present at the meeting, and another of his employes corroborated his testimony.

Mrs. Berky made remarks reflecting unfavorably upon Mr. Berky's fidelity in front of her family in Florida. She accused him of adulterous inclinations towards maids in the house.

In her testimony the wife admitted that there was no basis for such accusations. She denied making the accusations, but it appears clearly from her own testimony that she made some such charges, and the master and the court below were fully justified, in our opinion, in concluding that the accusations were made as testified to by the husband, that they were baseless, and that they were such as to constitute indignities to the husband.

The husband also testified that Mrs. Berky seriously interfered with his business. Shortly after the marriage she insisted that he discharge a certain female employe who, she said, had told her, in effect, that she would tell Mrs. Berky how to handle Max. Mrs. Berky told her husband that the girl had something on him and that the girl had to be fired or she would sue him for divorce. Mr. Berky told her he had merely taken the girl out once or twice before their marriage, which had no significance because the girl was engaged at the time of the wife's complaint, and that, if he fired her on his wife's say so, one of his other girls might quit. As a result of his wife's insistence and her emotional condition, Mr. Becky let this girl go. The girl requested permission to speak to Mrs. Berky

but she refused. At that time he had five girls in his employ, and within a week or two, two more had quit, leaving him with only two, neither of whom "had work of the same capacity".

Mrs. Berky called Mr. Berky very offensive names on a number of occasions. While she denied this to some extent, she admitted calling him a heartless bastard.

These unmerited reproaches by his wife, the abusive names she called him and her interference with the conduct of his business were sufficient to justify the master's conclusion that Mrs. Berky's conduct constituted indignities entitling the husband to a divorce.

In addition, Mr. Berky testified to continuous complaints by his wife on other matters, constant dissatisfaction with living in Uniontown, and unwillingness to entertain his friends. She quarreled with him over the arrangement of the furniture, and his conduct in making his son a beneficiary of his insurance policy. These matters, while not of themselves sufficient ground for divorce, fill in the picture of continuous harassment. The testimony as a whole indicated that Mr. Berky was continually harassed and often bewildered and distracted by his wife's conduct. The master believed the husband's testimony, and it is sufficient in our opinion to warrant the conclusion that Mrs. Berky's conduct rendered his life burdensome and his condition intolerable to the point where he felt that he could not continue to live with her. We affirm the conclusion of the master, confirmed by the court, that he was subjected by his wife to such indignities as would entitle him to a divorce.

2. The wife did not seriously dispute in her brief or argument the refusal of her divorce a mensa et thoro. Her testimony was insufficient either to warrant such a decree or to furnish a defense to her husband's action.

Mrs. Berky's testimony was that Mr. Berky was not considerate of her when her child was born, that he accused her of spoiling the baby and of nagging him during the period shortly after the birth, that he spent too many nights away from home, that he slapped her in the face at least five times, that in a fit of anger he broke a chair, and that he took a trip of two or three weeks' duration to Mexico, without her and, while he was away, sent her only four postcards which told her little more than where he was, and that he often called her a bitch.

As to the more serious of these accusations the master found that Mr. Berky slapped Mrs. Berky only after she had called him names which he felt were insulting to the memory of his mother. It appeared that the slapping occurred on only one occasion. She admitted that she called him a heartless bastard and that this was the occasion of the slapping. She said he slapped her five times and he admitted to slapping her twice at this time. There was no other instance of violence during the six years of cohabitation.

He denied swearing at her or calling her a "S. of a B."

Mrs. Berky testified that during one argument Mr. Berky broke a chair in anger, but later in her testimony, she admitted that the chair was not broken, and the matter fades into insignificance when all the testimony on both sides is considered.

Mr. Berky was out at night a good deal, but it appeared that this was required by his business, in most instances, and that his other absences occurred during the last year or two before suit was brought, when he attended Masonic meetings in Pittsburgh. The master's conclusion that these absences did not amount to indignities is warranted. The husband testified that the trip to Mexico was taken at the suggestion of his doctor who advised him to get away and have a period

alone by way of vacation. He had given his wife a trip to Florida just before this, and they went on another extended trip together shortly afterward.

It is quite clear that the husband supported his wife adequately. She said she had no complaint about this. He took her on several trips, including one to Hawaii and a Carribean cruise.

There is clearly no basis in this testimony for granting the wife a decree a mensa et thoro. By the same token, the master and the court below properly concluded that her husband was an innocent and injured spouse, entitled to a decree of divorce a.v.m. on the ground of indignities.

3. The appellant contends that the lower court erred in refusing to grant a rule to show cause why both proceedings should not be sent back to the master for further testimony and in dismissing her exceptions to the court's refusal to grant such a rule without permitting argument on the exceptions or without allowing depositions to be taken. We find no abuse of discretion by the lower court in these actions.

The petition consists largely of a series of general allegations to the effect that Mrs. Berky was nervous and not properly advised in the preparation and trial of her case. In addition, it avers that there were innumerable incidents to sustain her charge of indignities which had not been introduced into evidence and that there were witnesses whom she could have called to testify to these incidents and to sustain her veracity. However, the petition did not state what the incidents were and gave no names or other information with regard to the witnesses whom she wished to call. No facts have been alleged to indicate that a different conclusion would be reached upon a rehearing. Vague, nonspecific allegations that the losing party has additional witnesses and additional testimony to offer are not sufficient to move the court to open the judgment

if it concludes, as it did here, upon consideration of the entire testimony, that the divorce was properly granted.

The court below properly observed: "There is no suggestion of fraud or want of jurisdiction; only the implication that the case might not have been as wisely tried as it might now be on a second try. In this latter connection, there is no assertion that the evidence which is now sought to be introduced was not available at the time of hearing before the Master. We can find nothing in the present petition which could not be said on behalf of every unsuccessful litigant in any divorce or other legal proceeding. It is our considered judgment that the petitioner was ably and capably represented, before a distinguished member of our Bar as Master, who afforded her and her counsel ample opportunity to present all her evidence to him."

We agree with the court below that the petition amounts to no more than a request for a chance to retry the case without specifying in any detail anything new that would be presented. Since the court found, upon what we think are sufficient grounds, that the wife gave testimony which was inconsistent and at least in part incredible, we see no reason why she should be offered an opportunity to try her case over again.

4. The husband has appealed from the order of the court awarding the wife $750 as costs for printing the record on appeal and $750 as additional counsel fee. In 1958, the husband's adjusted gross income was reported by him at over $20,000. In 1957, it was over $21,000. The wife had reported an adjusted gross income in 1960 of $1460. The net worth of the husband's business in 1959 was $89,267 and his total net worth was in excess of this amount. The wife recently inherited approximately $41,000 from her mother's estate.

The action has been hard fought, and the testimony in the record before us covers 220 printed pages. Under the circumstances, we see no basis for superseding the lower court's order as to counsel fee. It acted clearly within its discretion in allowing $750 in addition to the $700 previously allowed.

As to costs, the husband contends that only this court, and not the court below, has the authority to make an allowance for costs on appeal. The law is otherwise. We have held that the allowance to the wife of a reasonable sum in advance for the cost of printing her paper books on appeal is largely within the sound discretion of the court below, and this court will not reverse except for plain abuse of discretion: *Doemling v. Doemling,* 118 Pa. Superior Ct. 426, 179 A. 813 (1935).

The orders and the decree appealed from are affirmed.